883 So.2d 124 (2004)
MISSISSIPPI DEPARTMENT OF CORRECTIONS, Appellant,
v.
Victor J. SMITH, Appellee.
No. 2003-CC-00091-COA.
Court of Appeals of Mississippi.
May 18, 2004.
Rehearing Denied July 27, 2004.
Certiorari Denied September 30, 2004.
*126 Joseph A. Goff; Jane L. Mapp, Jackson, attorneys for appellant.
John H. Whitfield, attorney for appellee.
EN BANC.
SOUTHWICK, P.J., for the Court.
¶ 1. We today evaluate whether a state employee presented substantial evidence that he had been invalidly dismissed as a probationary employee. The employee's appeal within the state personnel system resulted in a ruling that the dismissal was for political reasons and therefore improper. The agency has timely pursued judicial review. We find only strained speculation that a political reprisal caused the termination. There was no evidence to overcome the presumption of correctness of the employing agency's decision. We reverse and enter judgment upholding the employee's termination.
¶ 2. Victor J. Smith testified that he began work with the Harrison County Sheriff's Department in 1985. He worked his way up into increasingly more important positions and ultimately became a captain. The last sheriff there before he left was Joe Price. Smith claims in the present litigation that because of his loyalty to Sheriff Price, others loyal to the person who defeated Price in the 1999 election made it clear that he would no longer be welcome at the sheriff's department. He tendered his resignation in January 2000, at the time that the new sheriff took office.
¶ 3. Among the positions in law enforcement that Smith thereafter sought was one in the Mississippi Department of Corrections. After interviews and other processing, Smith was hired by the Department as a "Correctional Field Officer I," effective July 9, 2001. Almost simultaneously with his hiring, a new Regional Director for the region in which Smith would work began at the Department. This was Connie Taylor. Immediately upon learning that Smith was about to be employed, Taylor pursued having him terminated. He was, effective July 27, 2001.
¶ 4. Smith brought a claim before the Mississippi Employee Appeals Board, a component of the State Personnel Board. Miss.Code Ann. § 25-9-129 (Rev.2003). Both the hearing officer and then the Board found that improper political influence caused Smith to be terminated. His reinstatement with back pay was ordered. The decision was affirmed by the Hinds County Circuit Court on writ of certiorari. The Department of Corrections' appeal was deflected here.

DISCUSSION

1. Jurisdiction
¶ 5. Being granted an option to appeal in litigation is a matter of statutory grace, not of right. Casino Magic Corp. v. Ladner, 666 So.2d 452 (Miss.1995). Grace was bestowed on employees to appeal from Employee Appeals Board decisions. Miss.Code Ann. § 25-9-131 (Rev.2003). There is no corresponding grace given to employing agencies. Gill v. Mississippi Dept. of Wildlife Conservation, 574 So.2d 586, 590 (Miss.1990). However, a party who believes itself aggrieved by the action of "all tribunals inferior to the circuit court," may petition for a writ of certiorari to remove the case to circuit court. Miss.Code Ann. § 11-51-95 (Rev.2002). The petitioner may only seek review of "questions of law arising or appearing from the face of the record and proceedings" that are being *127 reviewed. Miss.Code Ann. § 11-51-93 (Rev.2002). An agency wishing judicial review of an Employee Appeals Board decision may seek this writ. Gill, 574 So.2d at 590.
¶ 6. In this case, Smith alleges that the circuit court never acquired jurisdiction since the actual petition for writ of certiorari was too imprecise to justify the issuance of the writ. Smith alleges that the petition had to "set forth with particularity why the finding [of the Employee Appeals Board] was arbitrary or capricious." Appellee Brief at 27 (¶ 93). This petition for a writ of certiorari alleged that the decision "was arbitrary and capricious in that it does not reflect an application of law to the facts," and that "the facts of the cause do not support the findings" of the Employee Appeals Board. Attached as an exhibit to the petition was a copy of the hearing officer's final decision and of the Board's one-page affirmance of that decision.
¶ 7. To analyze Smith's argument, we examine what is reviewed on certiorari. Though the statute limits review to "questions of law," the sufficiency of the evidence is part of that review:
should the record and proceedings below reflect a decision wholly unsupported by any credible evidence, we would regard that decision as contrary to law and, as a matter appearing on the face of the record or proceedings, subject to modification or reversal. We thus are in our familiar posture of judicial review of administrative processes wherein we may interfere only where the board or agency's decision is arbitrary and capricious, accepting in principle the notion that a decision unsupported by any evidence is by definition arbitrary and capricious.
Gill, 574 So.2d at 591 (footnote omitted).
¶ 8. Issuing a writ of certiorari is a discretionary matter. Merritt v. State, 497 So.2d 811, 813 (Miss.1986). We find no abuse in the exercise of the circuit court's discretion to grant the writ despite that the petition complained only in a general way about the Employee Appeals Board's decision. The petition specifically alleged an evidentiary deficit. Briefing and argument fleshed out where those shortcomings lay.
¶ 9. Smith also argues that because the 2002 legislature failed to adopt a proposed amendment to the review statute to permit the employing agency itself to appeal, that the right to review no longer exists.[1] We will not explore the argument other than to say that the legislature's failure to change the law leaves the law, to use a tautology, unchanged. Prior legal principles which permitted review by writ of certiorari remain in effect.

2. Review Standard
¶ 10. This appeal involves a review of the actions of two state agencies. Chronologically, the first action was by the Mississippi Department of Corrections when it decided to terminate Smith. The second agency action was the reversal of that termination by the Employee Appeals Board. The first level appellate court, the Hinds County Circuit Court, affirmed, but that initial judicial review is largely irrelevant for our purposes. Since a party was dissatisfied, we now serve as the second level judicial reviewers of the same decision that the circuit court reviewed.
*128 ¶ 11. Courts are not to substitute their judgment for that of administrative agencies when the latter act within the narrow areas of their statutory decision-making authority. Attala County Bd. of Supervisors v. Mississippi State Dept. of Health, 867 So.2d 1019, 1023 (Miss.2004). Discretion is exercised at the agency. A court examines the validity of the exercise within the wide range of discretion that is available. In a case such as the present one, an employing agency had discretion in the management of its work force, discretion to be exercised within certain parameters. The separate agency of the Employee Appeals Board reviewed that discretion and found it reversibly flawed. We seek an understanding of the relative weight to give to these separate agency decisions.
¶ 12. The foundational precedent for our understanding is Richmond v. Miss. Dept. of Human Services, 745 So.2d 254 (Miss.1999). That decision reversed an opinion of the Court of Appeals. Comparing the two decisions gives us a nuanced understanding of the nature of the appellate review. We discussed the Employee Appeals Board's role in reviewing the action of the employing agency:
The board must consider (a) whether the facts supporting the proposed action are true, and (b) whether the reasons, if proven, are "sufficient grounds for the action taken." Miss.Code Ann. § 25-9-127 (Rev.1991). Procedurally, however, the legislature has placed the burden on the appealing employee to show that the charged facts are not true or are not of sufficient gravity to merit the discipline imposed. Miss.Code Ann. § 25-9-127 (Rev.1991)....
Richmond v. Mississippi Dept. of Human Services, 96-CC-00667-COA (Miss.Ct.App. Aug. 4, 1998), at slip op. 3. The Board has twin responsibilities: to determine if what the agency claims was of concern did actually happen, and if so, whether it was enough to affect the employee in this manner. On both, the burden is on the complaining employee to disprove his agency's decision.
¶ 13. As to the question in Richmond of whether the remedy adopted by the employing agency was proper, we upheld the Appeals Board decision to impose no penalty, which itself had overturned the employing agency's decision to fire the employee. We found that included in its "broad authority is the board's obligation to weigh whether a particular offense, even if proved, constituted `sufficient grounds for the action taken.'" Richmond, slip op. at 10, quoting Miss.Code Ann. § 25-9-127 (Rev.1991). The Supreme Court reversed. Our upholding the Employee Appeals Board alteration of the penalty  from dismissal to no penalty at all  was found to be error.
Rule 20(b) mandates that the EAB shall not alter the action taken by the agency, if the agency has acted in accordance with the published rule and if the personnel action taken by the agency is allowed under the guidelines. That is exactly what happened here. MDOC acted within the rules under which termination was allowed. There is no finding to the contrary. Johnson, having the burden of proof, failed to establish that good cause did not exist for her termination.
Richmond, 745 So.2d at 257, quoting Johnson v. Mississippi Dep't of Corr., 682 So.2d 367, 370-71 (Miss.1996). Therefore, if certain events occur and the options for a penalty for such behavior under the rules applicable to the employing agency include the penalty actually imposed, the Appeals Board is without the authority to change the agency action.
¶ 14. The other part of the review is to examine the evidence to see if the alleged *129 employee conduct was untrue, or even if true, was just a subterfuge for another and improper reason that caused the agency to act as it did. In Richmond, this Court held that we would look for substantial evidence in the record made by the Employee Appeals Board:
In order to reverse the EAB, we must determine that there was not substantial evidence in the record to support the findings made by the hearing officer and ratified by the full board. Gill, 574 So.2d at 591. We hold that there was, in fact, substantial evidence to support the EAB's decision. Therefore, we conclude that the appeals board's order must be given effect. This requires us to reverse the decision of the circuit court holding to the contrary.
Richmond, 96-CC-00667-COA (Miss.Ct.App. Aug. 4, 1998), slip op. at 5.
¶ 15. There is nothing in the Supreme Court's Richmond decision that censured our search for substantial evidence to support what the Employee Appeals Board did, as opposed to substantial evidence to support the employing agency's original decision. The distinction is significant since "substantial evidence" is not an especially large quantum. It may be less than a preponderance but it has to be more than a "scintilla," a suitably underutilized word judicially adopted for these purposes and which means a mere trace or minute amount. Bd. of Law Enforcement Officers Standards and Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). The evidence must be such that would make any conclusion based on that evidence a reasonable one. Id. Since the amount may be less than a preponderance, there might be substantial evidence to support one fact-finder's view, and the same record may provide substantial evidence to support the opposite view. Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings, 419 So.2d 211, 213 (Miss.1982). We need to find substantial evidence underlying the Employee Appeals Board's decision to reinstate the employee, even if there was also substantial evidence to support the earlier termination.
¶ 16. What the Employee Appeals Board had to find by substantial evidence is more complex than is the usual agency decision. That is because it was the employee's burden to prove that an improper reason underlay the termination.
The statute and administrative regulations clearly place the burden of persuasion on the aggrieved employee to demonstrate that the reasons given are not true. Rule 17, Administrative Rules of the Mississippi Employee Appeals Board; Rules Miss.Code Ann. § 25-9-127 (1972).... This is not mere semantics. Under our scheme, in a nutshell, ties go to the appointing authority. That is, unless the employee carries the burden of persuasion that the alleged conduct did not occur, the employee has no right to have the employment decision overturned.
Richmond, 745 So.2d at 258, quoting Mississippi Dep't of Corr. v. McClee, 677 So.2d 732, 735 (Miss.1996). Since the Employee Appeals Board reversed the employing agency's decision, there must be substantial evidence that the actual reason was not what the Department of Corrections asserted but there was a different and improper reason.
¶ 17. Our review of the negative finding by the Board is still guided by the usual rules for appellate review. Upholding an agency on appeal requires these determinations: 1) existence of substantial evidence to support the decision; 2) absence of arbitrary or capricious conduct; 3) action within scope of agency's powers; and 4) no violation of parties' constitutional rights. Mississippi State Bd. of Nursing *130 v. Wilson, 624 So.2d 485, 489 (Miss.1993). The Employee Appeals Board is the agency whose decision is being reviewed, and thus those standards apply to the record made before that agency in the de novo hearing that it conducted of the employment decision that was appealed. We are searching for substantial evidence and the absence of arbitrariness in the Employee Appeals Board's decision that Smith proved error by the Department of Corrections.
¶ 18. Having determined the standard to apply and what to apply it to, we now turn to the evidence and the findings that were made.

3. Merits of Employee Appeals Board Decision
¶ 19. The Employee Appeals Board affirmed the decision of its hearing officer in this case. The substance of the Board's order was nothing more than the hearing officer's decision was "proper, correct and should be affirmed." We thus examine the hearing officer's findings, but we consider them to be the findings of the Board itself and will refer to them in that manner.
¶ 20. The Board found that only one of the fifteen witnesses said anything negative about Smith. As we will show, the count of negative sources might be a little higher than that. Several witnesses testified that Smith was qualified for the position at the Department of Corrections. The Department argued that it dismissed Smith during his probationary period because of concerns about his reputation among judges and law enforcement officers in Harrison County. There was also concern about an arrest or conviction that had been expunged from Smith's record.
¶ 21. For most state employees, dismissal must be based on "inefficiency or good cause"; aggrieved employees can make two challenges to the Employee Appeals Board about their dismissal: (a) that "the reasons stated in the notice of dismissal.. are not true," and (b) that the reasons, even if true, "are not sufficient grounds for the action taken...." Miss.Code Ann. § 25-9-127(1) (Rev.2003). Smith was a probationary employee during his first twelve months of employment and did not have these protections. Id. That did not leave him without rights. A very similar situation existed in one of the principal precedents, in that a probationary employee complained that he had been dismissed for political reasons. The Supreme Court found that even though a probationary employee has no protection via the "good cause" standard, still he many not be "adversely affected" for unlawful reasons. Gill, 574 So.2d at 591. Most state employees are protected by general policies established in another statute, including these:
(e) To assure fair treatment of ... employees in all aspects of personnel administration without regard to political affiliation,....
(f) To assure that employees are free from coercion for partisan or political purposes....
Miss.Code Ann. § 25-9-103 (Rev.2003). The Gill Court found that these "statutes standing alone confer upon state employees no express right to be secure in their employment from political interference. The legal existence of the legislative language just quoted makes no sense, however, absent such rights." Gill, 574 So.2d at 592.
¶ 22. Consequently, what Smith had to prove to the Employees Appeals Board by substantial evidence is that the Department of Corrections discharged him for political reasons. He pleads no other improper basis. What is not enough is that Smith show that he was a good employee, *131 qualified to serve in the position. The Department did not need good cause for his dismissal as a probationary employee, but it did have to avoid bad cause.

a. Substantial evidence of events
¶ 23. The recommendation to terminate Smith from his position at the Department of Corrections was made by Regional Director Connie Taylor. It was then approved by a deputy commissioner based solely on Taylor's recommendation. Taylor had worked for the Department since 1983. As Regional Director, she was responsible for two hundred employees in twenty-three probation and parole offices and in eight regional facilities, the latter being community work centers and restitution centers. She had known Victor Smith for about ten years.
¶ 24. Taylor became Regional Director on June 30, 2001. Smith had a application for employment that had already been approved, which Taylor noticed and informed those in the decision process that she did not favor. The outgoing Regional Director, with whom Taylor was meeting when she learned of Smith's application, had already approved the recommendation for employment and the hiring was practically finalized. Smith became a Department employee on July 9. Due to Taylor's efforts, on July 23, 2001, a termination letter was sent to Smith.
¶ 25. There was testimony that Connie Taylor believed that Smith had during his time at the Harrison County Sheriff's Department caused at least one circuit court judge to distrust his testimony. In her twenty years with the Department, she had frequently worked on the Gulf Coast. She testified that she told the outgoing Regional Director that Smith's reputation among local law enforcement was not a positive one. She also said that in her observations through the years, Smith did not seem to be a hard worker  that he was always "sitting down either with his feet up on the desk or simply visiting with other staff members, and this is over a lengthy period of time." She made a categorical statement at the hearing that other law enforcement agencies would not hire Smith, and that over a ten year period "I've never heard one nice, respectable thing said about Victor Smith." Taylor summarized her reasons for not wanting him hired:
I could foresee there were going to be some problems. I do not think this person would function well in the courtroom or interacting with other law enforcement officers. I could even see it being questionable whether or not this person is very trustworthy to have in our office.
¶ 26. The accuracy of Taylor's opinion is largely irrelevant. Considerable evidence was offered by Smith at the hearing that he was held in high esteem by those in local law enforcement with whom he had worked. Based on the evidence in the record, the preponderance is that he was a good employee in his previous positions. Nonetheless, what Smith must show is that the reason stated for the dismissal was a pretext for an improper reason, not just that it might have been in error. This case alleges that the actual reason was political ill will left over from his backing a losing candidate for Harrison County Sheriff in 1999. Taylor was asked whether she knew the losing candidate, Joe Price. She did. Price had lived a block from her when she was growing up, and she was friends and had been a classmate with some of his children. During her work in law enforcement, she had many contacts with Price. She considers him a good friend.
¶ 27. Smith had backed Sheriff Joe Price in the 1999 election, but George *132 Payne won. Smith resigned effective on the day that Payne began his service as sheriff. Taylor testified that she also got along with newly elected Sheriff Payne. She denied that Smith's support for Price in the 1999 election for Harrison County sheriff had anything to do with her decision that Smith should not be hired by the Department of Corrections. She denied talking to any elected official about Smith's termination, or having been encouraged in anyway to have him terminated. Taylor testified that she did not know Smith was on the verge of being hired by the Department until the day she met with the outgoing Regional Director. She immediately expressed her objection.
¶ 28. On cross-examination, it was shown that Taylor's opinion about Smith may not have been based on comprehensive knowledge of what he had done during his time at the sheriff's department and his reputation among others. Her opinion, in other words, may have been wrong.
¶ 29. There was also testimony that shortly before the termination letter was sent, and after Taylor had decided on the desirability of terminating Smith, she received a copy of an order that expunged an arrest or a conviction. The order was not introduced into evidence, but there was testimony that it concerned a conviction for grand larceny. The expungement was ordered on November 16, 1989. A copy of the order was provided to Taylor by an employee of the Harrison County Sheriff's Department, someone who had worked both for the defeated sheriff and who continued under the new sheriff. Taylor testified that the expungement order had very little to do with her decision. Her concerns about Smith were from her personal interactions with him.
¶ 30. The only other witness called by the Department was a deputy commissioner at the Department, Lora Cole, who testified that Taylor convinced her of the need to terminate Smith. The only matters that Taylor discussed with Cole were that Smith was a poor worker and that he did not have the reputation with local officials that would be helpful to the Department. Cole accepted Taylor's recommendation and ordered Smith terminated. No discussion or allusion to political considerations occurred. No one else contacted Cole to encourage Smith's firing.
¶ 31. At the hearing, Smith's attorney called several witnesses who were involved in the decision to offer the position to Smith. They were positive in their comments about his abilities, the background check that was conducted, and the comments that they had received from the individuals listed as his references. He also had performed well in the few weeks he was employed by the Department before his termination.
¶ 32. One of Smith's witnesses stated that Taylor had told her that one of the circuit judges in Harrison County had banned Smith from his courtroom. This witness telephoned the named judge and was told that Smith was not banned. However, the witness recounted that the judge told her "I never said that he lied, you know, on the stand, but that he told him some things that he had trouble believing, you know, that were a little farfetched." On cross-examination, the witness repeated that the judge told her that "some of [Smith's] testimony... was a little hard for [the judge] to believe."
¶ 33. Though most witnesses whom Smith called stated only positive things about him, one witness was aware of concerns that Smith may have engaged in profiling of Spanish-appearing individuals on the highway in making traffic stops.
¶ 34. Also testifying was the defeated sheriff, Joe Price. It was Smith's support *133 of Price that was found to have cost him his briefly-held position with the Department of Corrections. Sheriff Price thought that Smith was an excellent employee and thus disagreed with Taylor's testimony about his zeal and abilities. Still, the former sheriff had no knowledge of any political pressure on the Department or on Connie Taylor not to hire Smith. Price's testimony on the next point was elliptical, and we quote it because it is the only testimony besides that from Smith himself that refers to a cost being paid by Price's political supporters:
Smith's attorney: And isn't it true that the current sheriff and the current sheriff's administration, although some of those individuals did work under your command, they are very harsh toward people like Mr. Smith and others who were just your diehard supporters?
Sheriff Price: There was a feeling there that probably exists in some of the former  former ranking people because he reported directly to me.
Smith's attorney: Such as Major Cook?
Sheriff Price: Major Cook. The higher rank and file. I've heard that, yes.
¶ 35. Former Sheriff Price said that he had a good relationship with Taylor, the person whom Smith accuses of forcing him out because he helped Price politically. Price agreed that Smith probably had been the subject of some media reports about profiling of Hispanic drivers, but he did not give much credence to them. He was also aware of problems that Smith had with testifying in one or more cases, though the complaint as he remembered it was from the district attorney.
¶ 36. We find nothing in the testimony or other evidence recounted so far that supports the charge that Smith was terminated because of political pressure due to his work for the defeated sheriff. The defeated Sheriff Price had "heard" of strong feelings among some of the higher ranking officers at the Harrison County Sheriff's Department, but there was no evidence that any such ill will infected the state or regional offices of the Department of Corrections, or the Regional Director Connie Taylor who had sought Smith's termination. Even if an expunged conviction record should not be considered at all, the evidence was that the decision by Taylor to have him terminated had been made before that record was provided. Therefore, we turn to Smith's own testimony to see if it provides any evidence to support the findings that he was improperly fired.
¶ 37. Smith's attorney asked him why the charge of a political vendetta was made:
Smith: Over the years I've been with the Harrison County Sheriff's Department ..., other officers and ranking officers were jealous because of the things that I would obtain or schools that I would get to go to, items that we'd get to pick, things that I would be able to do for the Department.... I was offered by the George Payne administration [campaign?], either get on the bandwagon or you'll regret it during a political rally, and I advised them then that I don't jump ship.
¶ 38. Smith sought to link this 1999 threat by those connected to the current sheriff and the effort by Connie Taylor in 2001 at the Department of Corrections to have him terminated. The link was that Taylor called the sheriff's department after she had decided to try to have Smith terminated and an employee there passed on the information to her about the conviction that had been expunged. That means that the evidence to support that Connie Taylor's actions were politically motivated was that someone at the sheriff's department, perhaps seeking to harm Smith for *134 political reasons, caused Taylor to learn of an expunged crime.
¶ 39. Yet there is no evidence of any kind that the decision-maker at the Department of Corrections had any improper motivation, political or racial or sexual or anything else. True, there were also evidentiary doubts about whether Taylor's opinions of Smith were shared by many other people. Yet that opinion was supported in part, both by a witness who said that one of the circuit judges felt that Smith's trial testimony could be "hard to believe," and by Sheriff Price who acknowledged some problems that Smith had during his service. Price defended Smith, but that is not the same as saying that Connie Taylor fabricated her concerns, much less that she did so because of Smith's political work. No evidence permitted an inference that Taylor herself had a reason to be the instrument for a sheriff's department's possibly politically-motivated ill will towards Smith.
¶ 40. We have surveyed and summarized the evidence as carefully and fairly as we can. Not a scintilla of evidence exists that Taylor herself had a political motive to have Smith fired. No judgment is being made on Smith's merits as a law enforcement officer. We seek only evidence on which the Employee Appeals Board could have relied to conclude that Taylor had Smith terminated because of his political work. We find no such evidence.

b. Conformity of remedy of dismissal to agency rules
¶ 41. Since Smith was a probationary employee, the issue before us is not whether the facts that caused his dismissal were "good cause" under personnel rules for terminating employees. It was simply necessary that the Department of Corrections not dismiss Smith for a prohibited reason. We have already discussed the facts and law of that question. There is no further analysis needed regarding justification under state personnel regulations.
¶ 42. We reverse and enter judgment reinstating the decision of the Mississippi Department of Corrections to terminate Victor Smith.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY AFFIRMING THE EMPLOYEE APPEALS BOARD IS REVERSED, AND JUDGMENT IS ENTERED UPHOLDING THE DISMISSAL OF VICTOR J. SMITH FROM EMPLOYMENT AT THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. ALL COSTS ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. THOMAS AND LEE, JJ., NOT PARTICIPATING.
NOTES
[1] MISS. SEN. J. 1997, 2067 (2002); MISS. H.J. 858, 910 (2002) (final recorded action on "SB 2854: State agencies; entitled to judicial review of decisions by Employee Appeals Board," was the appointment of conference committee members from each house).