965 So.2d 696 (2007)
MISSISSIPPI DEPARTMENT OF TRANSPORTATION, Appellant
v.
Shirley RUTLAND, Appellee.
No. 2005-CC-02062-COA.
Court of Appeals of Mississippi.
March 6, 2007.
Rehearing Denied July 17, 2007.
*698 John L. Maxey II, Paul H. Kimble, Jackson, attorneys for appellant.
Dennis L. Horn, Madison, Darold L. Rutland, attorneys for appellee.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
MYERS, P.J., for the Court.
¶ 1. The Mississippi Department of Transportation (MDOT) brings this appeal *699 from the order of the Circuit Court of Hinds County, Mississippi, which affirmed the decision of the Mississippi Employee Appeals Board (EAB) to reinstate MDOT employee Shirley Rutland to her former position with full back pay and benefits. MDOT terminated Rutland in February 2004 and she immediately appealed her termination to the EAB claiming that her termination was politically motivated. The hearing officer appointed to hear Rutland's appeal on behalf of the EAB found that Rutland had failed to meet her burden of proof and affirmed her termination. However, on appeal to the full board, the EAB, sitting en banc, reversed the hearing officer's decision and ordered Rutland reinstated, based on its determination that Rutland's discharge was the culmination of an ongoing political and personal dispute between MDOT Executive Director Larry "Butch" Brown and Central District Transportation Commissioner Dick Hall. The decision of the en banc EAB was affirmed by the Circuit Court of Hinds County, and MDOT now appeals raising the following issues:
I. WHETHER THE INITIAL DECISION OF THE EAB HEARING OFFICER AFFIRMING RUTLAND'S TERMINATION SHOULD BE AFFORDED DEFERENCE OVER THE FINAL DECISION OF THE EAB, SITTING EN BANC, TO REINSTATE RUTLAND?
II. WHETHER THE RECORD CONTAINED SUBSTANTIAL EVIDENCE IN SUPPORT OF RUTLAND'S ALLEGATION THAT HER TERMINATION WAS POLITICALLY MOTIVATED?
¶ 2. After review of the record, we find that the final decision of the en banc EAB should be afforded deference over the decision of the hearing officer, and that the record contains sufficient evidence to support the circuit court's decision to affirm the order of the en banc EAB. Accordingly, the decision of the Circuit Court of Hinds County is affirmed.

STATEMENT OF THE FACTS
¶ 3. We begin our discussion of this case by providing a brief overview of MDOT's organizational structure. The Transportation Commission is comprised of one elected commissioner from each of the State's three districts. Miss.Code Ann. § 65-1-3 (Rev.2005). The Transportation Commission elects one of its three members to serve as chairman of the commission and to preside over the commission meetings for the four-year term for which the commissioners are elected. Miss.Code Ann. § 65-1-5 (Rev.2005). The Commission is responsible for formulating MDOT's operational policies, as well as appointing and discharging an executive director. Miss. Code Ann. § 65-1-9 (Rev.2005). All day-to-day managerial decisions, including the hiring and firing of MDOT's more than 3,300 employees, are exercised exclusively by the executive director. Miss.Code Ann. § 65-1-10 (Rev.2005). There are two types of employees working for MDOT, state service employees and non-state service employees. State service employees, as defined by Mississippi Code Annotated section 25-9-107 (Rev.2006), are those employees "serving in positions in state departments, agencies, or institutions that are covered by the state personnel system." Miss.Code Ann. § 25-9-121 (Rev. 2006). Non-state service employees are those "employees serving in state departments, agencies, or institutions that are excluded from state service." Miss.Code Ann. § 25-9-107 (Rev.2006). A key distinction between state service employees and non-state service employees is that state service employees may only be terminated *700 for good cause, after written notice and a hearing. Miss.Code Ann. § 25-9-127 (Rev.2006). However, non-state service employees, including probationary state service employees during the first twelve months of employment, are not afforded this protection. Id. Non-state service employees may be terminated, without notice, for any reason other than "on the basis of race, color, creed, sex, religion, national origin, age, disability, or political affiliation; and/or a violation of a right otherwise specifically protected by the U.S. Constitution or other law." Employee Appeals Board Administrative Rules, July 2003, Appendix A, Grievable Issues, P. 19 section D.
¶ 4. In the summer of 2003, a dispute arose between Central District Transportation Commissioner Dick Hall and MDOT Executive Director Butch Brown over the protocol concerning MDOT press releases. Hall had recently been appointed Chairman of the Transportation Commission, and had instructed his assistants, Brad White and Shirley Rutland, to create letterhead designating him as "Chairman," to be used in MDOT press releases bearing his name. Brown took issue with Hall's use of the "Chairman" title, and created an External Affairs Division to handle all press releases emanating from MDOT. Brown also established a protocol for when the "Chairman" title would be used. If the press release concerned an action of the Commission, and Hall was speaking for the Commission as a whole, then Hall would be afforded the "Chairman" designation. However, if the press release concerned routine matters, such as lane closures or ribbon cuttings in Hall's district, then the release would designate Hall only as "Central District Transportation Commissioner." Hall took issue with Brown's protocol, first, because past chairmen had been allowed to use the "Chairman" title in all press releases, and second, Hall felt that the protocol was an attempt on Brown's part to undermine Hall's influence in an election year. As a result, Hall instructed his assistants not to follow Brown's protocol and to include the "Chairman" designation on all of his press releases.
¶ 5. This dispute between Brown and Hall created substantial friction between Hall's assistants, Brad White and Shirley Rutland, and the personnel in External Affairs. After several battles over the title, Hall ordered White and Rutland to draft the press releases for his office and to send them out without going through External Affairs. The personnel in External Affairs alerted Brown to White's and Rutland's practice, and Brown called Rutland in for a meeting on the subject on August 12, 2003. At her termination hearing, Rutland testified that in the August 12, 2003 meeting, Brown asked her for whom she worked. When Rutland stated that she worked for Hall, Brown became enraged and according to Rutland stated: "The Bible says that you can only serve one master, and around here I'm the God d___ master, that son-of-a-b____ Hall does not run this agency." Rutland testified that Brown then informed her that he had hired her and that he alone could fire her. Before Brown could continue, Rutland walked out of Brown's office and immediately went to Hall and informed him of her conversation with Brown. Hall then met with Brown, and Brown told Hall that Rutland was causing a disruption in External Affairs. Hall told Brown that Rutland was following his directions and that he would handle his own staff.
¶ 6. The turmoil over the press releases continued throughout the fall of 2003, prompting Executive Director Brown to suggest to Southern District Commissioner Wayne Brown (no relation) that Rutland be terminated. Commissioner Brown agreed that Rutland was causing a disruption and should be terminated. Director *701 Brown then contacted Mary McDonald, Human Resources Director at MDOT, and determined that Rutland was a non-state service employee who could be terminated without cause or notice. Director Brown then began the process of terminating Rutland. However, before Rutland could be terminated, Hall made a motion before the Commission to discharge Director Brown. Commissioners Hall and Stewart voted two-to-one over Commissioner Brown to terminate Director Brown, effective November 18, 2003.
¶ 7. Following Butch Brown's termination, elections were held for the commissioners' seats. Hall and Wayne Brown retained their seats on the Commission, but newcomer Bill Minor was elected to replace Zack Stewart for the Northern District. Since Butch Brown's termination, the Commission had been interviewing potential replacements for Executive Director of MDOT. However, once Minor joined the Commission, he and Wayne Brown voted two-to-one over Hall to re-hire Butch Brown, effective January 13, 2004. Commissioner Brown testified at the EAB hearing that when Butch Brown was rehired, Commissioners Brown and Minor warned Butch Brown against any retaliatory firings.
¶ 8. On February 3, 2004, Director Brown terminated Rutland via a letter citing Section 5.0 of the Mississippi Employee Handbook, which states that a non-state service employee may be terminated with or without cause or notice. Rutland appealed her termination to the EAB on February 13, 2004, alleging that her termination was an attempt by Director Brown to retaliate against Hall for discharging Brown the previous November. Hearing Officer William H. Smith was appointed to hear the matter, and a hearing was held in Mendenhall, Mississippi on May 27, 2004. After hearing testimony from Butch Brown, Wayne Brown, Bill Minor, Jim Willis, Mary McDonald, Dick Hall, Brad White, Jim Majure, Shirley Rutland, and several other MDOT employees, as well as arguments from counsel, Smith affirmed Rutland's termination, finding that she had failed to meet her burden of proof by showing substantial evidence that her termination was politically motivated. On July 9, 2004, Rutland made a request for an en banc review of Smith's decision, and on November 18, 2004, the EAB, sitting en banc, reversed the hearing officer's ruling and reinstated Rutland with full back pay and benefits. We note that Smith was a member of the full board and did not issue a dissenting opinion. MDOT appealed the final decision of the EAB to the Circuit Court of Hinds County. The circuit court found the record to contain substantial evidence in support of the EAB's en banc decision and affirmed the decision to reinstate Rutland. From the decision of the Circuit Court, MDOT now appeals.

STANDARD OF REVIEW
¶ 9. Appellate courts are not to substitute their judgment for that of an administrative board or agency when the board or agency acts within the narrow confines of its statutory decision-making authority. Miss. Dep't of Corr. v. Smith, 883 So.2d 124, 128(¶ 11) (Miss.Ct.App. 2004). In the case at bar, the EAB was to consider whether the facts offered in support of MDOT's termination of Rutland were true, and whether those reasons, if proven, are sufficient grounds for her termination. Id. (citing Miss.Code Ann. § 25-9-127 (Rev.1991)). The legislature has placed the burden on the appealing employee to show that the charged facts are not true or are not of sufficient gravity to merit the discipline imposed. Id. Great deference has been afforded to an administrative agency's construction of its own rules and regulations and the statutes under which they operate. Mississippi State Tax Comm'n v. Mask, 667 So.2d 1313, *702 1314-15 (Miss.1995). The applicable scope of review of the circuit court over the decision of the EAB to reinstate Rutland as provided by our supreme court was as follows:
The statutory scope of judicial review of employee appeals board decisions is found in Miss.Code Ann. § 25-9-132 (Rev.2003), which states in pertinent part:
(2) The scope of review of the circuit court in such cases shall be limited to review of the record made before the employee appeals board or hearing officer to determine if the action of the employee appeals board is unlawful for the reason that it was: (a) Not supported by substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee.
These factors which govern the standard of review for agency decisions are the only grounds for overturning an agency's action; otherwise the agency's determination must remain undisturbed.
Miss. Transp. Comm'n v. Anson, 879 So.2d 958, 963(¶ 13) (Miss.2004). In our review of the decision of the circuit court concerning the agency action, we are bound to follow the same standard of review as the lower court. Miss. Sierra Club, Inc. v. Miss. Dep't of Envtl. Quality, 819 So.2d 515, 519(¶ 15) (Miss.2002).

LEGAL ANALYSIS
I. WHETHER THE INITIAL DECISION OF THE EAB HEARING OFFICER AFFIRMING RUTLAND'S TERMINATION SHOULD BE AFFORDED DEFERENCE OVER THE FINAL DECISION OF THE EAB, SITTING EN BANC, TO REINSTATE RUTLAND?
¶ 10. Under our standard of review, we must give deference to the rules promulgated by the EAB. The EAB has clearly set out the rules governing its appeals process and those rules are provided in the Mississippi State Employee Handbook as follows: "any party aggrieved by the final written decision of a presiding Hearing Officer entered on the hearing of an appeal may file a Written Request for Review by the Full Board." Mississippi State Employee Handbook, July 2005, Appeals to the Full Board, P. 88 section 11. The Handbook further states: "the full board shall issue a final written decision and order on the review within a reasonable time after the final date for considering all documents to be considered on review." Id. at P. 89 section 11 (emphasis added). However, MDOT argues that the opinion and order of Hearing Officer Smith should be granted deference over the final decision of the en banc EAB. In support of this argument, MDOT cites Smith, 883 So.2d at 124, and asserts that Smith stands for the proposition that the hearing officer should be afforded deference over the full board because the hearing officer had the benefit of observing, interacting with, and determining the credibility of the witnesses, while the full board order is based upon a review of only the dry record. However, we find MDOT's interpretation of the Smith decision to be in error.
¶ 11. In Smith, the EAB affirmed the decision of the hearing officer. On appeal, Judge Southwick, writing for the Court, wrote: "[t]he substance of the Board's order was nothing more than the hearing officer's decision was `proper, correct, and should be affirmed.'" Id. at 130(¶ 19). Judge Southwick further added: "[w]e thus examine the hearing officer's findings, but we consider them the findings of the board itself. . . ." Id. (emphasis added). The hearing officer's findings in Smith *703 were given deference because they were adopted as the final findings of the full board, not because the decision of the hearing officer somehow trumped the decision of the full board. The case at bar stands in contrast to Smith, in that the full board rejected the hearing officer's findings and issued their own. What is more, the hearing officer sat as a member of the full board and failed to issue a dissenting opinion to the order of the full board. This Court is in agreement with the opinion of the circuit judge espoused during arguments before that court, that to accept MDOT's argument in favor of deference to the hearing officer, would be to find that "in any case in which the EAB reverses the hearing officer's findings, all the losing party has to do is to appeal, and automatically the hearing officer's findings are reinstated . . . [c]learly, this is not the law." We hold that deference shall be given to the decision of the EAB, sitting en banc, and we proceed with our review accordingly.
II. WHETHER THE RECORD CONTAINED SUBSTANTIAL EVIDENCE IN SUPPORT OF RUTLAND'S ALLEGATION THAT HER TERMINATION WAS POLITICALLY MOTIVATED?
¶ 12. The fact that Rutland was a probationary employee during the first twelve months of employment and did not have the protections afforded to state service employees, i.e., termination for good cause only after notice and a hearing, is undisputed. Miss.Code Ann. § 25-9-127 (Rev.2006). However, our supreme court has held that even though a probationary employee has no protection via the "good cause" standard, he or she may not be "adversely affected" for unlawful reasons. Gill v. Miss. Dep't. of Wildlife Conservation, 574 So.2d 586, 591 (Miss.1990). Furthermore, state employees are protected by general policies established in other statutes, including "fair treatment . . . without regard to political affiliation," and to be free from "coercion for partisan or political purposes. . . ." Miss.Code Ann. § 25-9-103 (Rev.2006). The statutes and administrative regulations applicable to this case placed the burden upon Rutland to prove, by substantial evidence, that she was terminated for political reasons. Further, Rutland had the burden to show that the reason given by MDOT for her termination, that she caused a disruption within External Affairs, was merely a pretext to the true motive behind MDOT's actions. Smith, 883 So.2d at 129-30(¶ 16). This burden of proof could not be met merely by proving that Rutland was a good employee. Id. In order to reverse the ruling of the EAB, we must determine that there was not "substantial evidence" in the record to support the finding of the full board that Rutland's termination was a politically motivated retaliatory firing. "`Substantial evidence' is not an especially large quantum." Id. at 129(¶ 15). "Substantial evidence" may be less than a preponderance, but must be more than a scintilla, and "must be such that would make any conclusion based on that evidence a reasonable one." Id. Accordingly, there may be substantial evidence in the record to support one fact-finder's view, and in the same record substantial evidence to support the opposite view. Id.
¶ 13. Our review of the record indicates that the full board found substantial strife to have ensued between Hall's staff and External Affairs over the use of the "Chairman" title in MDOT press releases. The record contains testimony that Hall's staff wrote the releases as Hall had instructed, while External Affairs was operating as Director Brown had instructed. The EAB found that the orders were in conflict and created a stressful situation, *704 not of the employees' making. Further, the EAB found that Butch Brown's own testimony and the testimony of MDOT employees Jim Majure, Brad White, and Shirley Rutland, as well as that of Commissioner Dick Hall indicated that Director Brown took substantial issue with Hall's exercise of power and wanted to make clear that he ran the agency, not Hall. In support of this finding, we note that both Majure and Rutland testified that Brown declared himself "master" of the agency, and stated, "that son-of-a-b___ Hall, does not run this agency." White also testified to receiving an e-mail to this effect.
¶ 14. Additional support for the EAB's finding is apparent in the testimony of Commissioners Bill Minor and Wayne Brown. In their testimony, both indicated that they had harbored concern over possible retaliatory firings when Butch Brown was rehired and that they warned Brown against such actions. Further, evidence of the political motivation behind Rutland's termination may also be gleaned from the testimony of an MDOT safety engineer, Jim Wills, regarding a meeting between he and Director Brown shortly after Brown was rehired. Although Rutland spent the majority of her time working for Hall, she also worked as an assistant to Willis. Willis testified that Brown asked him whether Rutland had worked on Hall's campaign for reelection. Willis told Brown that he was not aware of Rutland working on Hall's campaign. Brown then asked Willis to keep the meeting between the two of them secret.
¶ 15. Finally, White and Hall testified that they were sure that the firing was politically motivated. White testified that he handled ninety-five percent of the press releases sent out by Hall and dealt with External Affairs far more often than Rutland. However, because White has strong political connections in Simpson County, which lies within Commissioner Brown's electoral district, he believes that Commissioner Brown would not allow Director Brown to terminate him. White testified that this belief was based on the fact that shortly after Director Brown was rehired, Commissioner Brown approached him and alerted him that Director Brown was going to fire three or four people. However, Commissioner Brown assured White that his position with MDOT was secure. Hall and White both testified that it was their belief that because Director Brown lacked the power to get rid of Hall, he instead, went after the only person he could, Rutland.
¶ 16. Based on the foregoing facts, we find that the decision of the EAB, sitting en banc, finding Rutland's termination to be politically motivated, is supported by "substantial evidence," and must be afforded deference by this Court. We reiterate that it is not the function of this Court to substitute our judgment for that of an administrative board when the board acts within the narrow confines of its statutory decision-making authority. Smith, 883 So.2d at 128(¶ 11). Accordingly, the holding of the en banc EAB, affirmed by the Circuit Court of Hinds County, reinstating Rutland to her position as an assistant to Dick Hall, with full back pay and benefits, is affirmed.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.