LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Louise Reid’s employment was terminated by the Mississippi State Hospital for alleged misconduct that occurred at the Cleveland Crisis Intervention Center. Reid alleges she was terminated because of her race. She appealed her termination to the Employee Appeals Board (EAB). A hearing was held, and an order was entered upholding Reid’s termination. The order was affirmed by the full EAB.
 

 ¶ 2. Reid then appealed to the Circuit Court of Hinds County. The circuit court affirmed the decision of the EAB.
 

 ¶ 3. Reid now appeals, arguing that the trial court erred in finding that she was not the subject of racial discrimination.
 
 *824
 
 Finding no error, we affirm the decision of the EAB.
 

 FACTS
 

 ¶ 4. Reid, an African American female, was employed as a family nurse practitioner at the Cleveland Crisis Center from October 2005 through October 11, 2007. She was a non-state service employee. Two fellow employees made the following allegations against Reid: (1) she verbally abused and threatened a patient; (2) she wrote a “cocktail” order for a combination of drugs to sedate a patient; (3) she entered the wrong date on a medical chart; (4) she allowed a social worker to use her credit card to pay for a moving truck for a patient; and (5) she authorized medication to be given to a fellow employee. Reid was terminated after an investigation.
 

 STANDARD OF REVIEW
 

 ¶ 5. The decision of an employee appeals board will be upheld unless it is: “(a) [n]ot supported by any substantial evidence; (b) [a]rbitrary or capricious; or (c) [i]n violation of some statutory or constitutional right of the employee.” Miss.Code Ann. § 25-9-132 (Rev.2006).
 

 ¶ 6. An appellate court will not disturb a decision of an administrative agency if substantial evidence supports that agency’s finding, and the scope of review is limited to the factual findings of the agency.
 
 Walters v. Miss. Dep’t of Econ. and Cmty. Dev.,
 
 768 So.2d 893, 895 (¶ 8) (Miss.2000). This Court “may neither substitute its own judgment for that of [the] administrative agency which rendered the decision nor reweigh the facts of the case.”
 
 Miss. Transp. Comm’n v. Anson,
 
 879 So.2d 958, 964 (¶ 18) (Miss.2004).
 

 DISCUSSION
 

 ¶ 7. Reid was a non-state service employee of the Mississippi State Hospital. She alleges that her employment was terminated because she is an African American. The rights of non-state service employees have been explained by this Court as follows:
 

 Non-state service employees are those “employees serving in state departments, agencies, or institutions that are excluded from state service.” Miss. Code Ann. § 25-9-107 (Rev.2006). A key distinction between state service employees and non-state service employees is that state service employees may only be terminated for good cause, after written notice and a hearing. Miss. Code Ann. § 25-9-127 (Rev.2006). However, non-state service employees, including probationary state service employees during the first twelve months of employment, are not afforded this protection.
 
 Id.
 
 Non-state service employees may be terminated, without notice, for any reason other than “on the basis of race, color, creed, sex, religion, national origin, age, disability, or political affiliation; and/or a violation of a right otherwise specifically protected by the U.S. Constitution or other law.” Employee Appeals Board Administrative Rules, July 2003, Appendix A, Grievable Issues, P. 19 section D.
 

 Miss. Dep’t of Transp. v. Rutland,
 
 965 So.2d 696, 699-700 (¶3) (Miss.Ct.App.2007).
 

 ¶ 8. The United States Supreme Court has established a three-prong test to prove racial discrimination.
 
 McDonnell Douglas Corp. v. Green,
 
 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);
 
 Gulf Coast Research Lab. v. Amaraneni,
 
 722 So.2d 530, 535 (¶ 21) (Miss.1998). First, the complainant must show a prima facia case of racial discrimination.
 
 Id.
 
 Second, “[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee’s rejection.”
 
 *825
 

 Id.
 
 If the employer succeeds “in carrying its burden of production, the
 
 McDonnell Douglas
 
 framework — with its presumptions and burdens — is no longer relevant.”
 
 St. Mary’s Honor Center v. Hicks,
 
 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Third, the plaintiff is then required to prove by a preponderance of the evidence “ ‘that the defendant intentionally discriminated against [him]’ because of his race.”
 
 Id.
 
 at 511, 113 S.Ct. 2742 (citation omitted).
 

 ¶ 9. In order to prove a prima facia case of intentional racial discrimination, Reid must prove that she:
 

 (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his [or her] protected group or was treated less favorably than other similarly situated employees outside the protected group.
 

 McCoy v. City of Shreveport,
 
 492 F.3d 551, 556 (5th Cir.2007).
 

 ¶ 10. It is undisputed that Reid is a member of a protected class. It is also undisputed that she was qualified for her position, and she suffered an adverse action by her employer. The only contention on appeal is whether Reid was treated less favorably than other similarly situated employees.
 

 ¶ 11. Crosby Tanner, chief investigator of the Mississippi State Hospital, an African American, testified that his office investigated the allegations against Reid. Tanner testified that Reid admittedly made the following statement to a mentally-ill patient: “going to be one more ‘bitch’ and then I’m going to jump across this desk and it’s going to be on.” Reid told another patient to “get out of [her] face.” Reid admitted that she allowed a patient to use her credit card for moving expenses in exchange for cash. She also admitted that she instructed a nurse to give an employee pain medication, although she denied that the medication was intended for a patient. Reid denied the accusation that she yelled at patients; however, Tanner noted that she was asked to stop yelling at one of the investigators. Tanner testified that if a white employee had committed the same offenses as Reid, his recommendation would have been the same.
 

 ¶ 12. Dr. Lydia Weisser, clinical director of the Mississippi State Hospital, testified that she held a staff meeting after becoming aware of problems at the Cleveland Crisis Center. Dr. Weisser addressed the use of drug “cocktails” at the meeting. The “cocktails” were a combination of drugs given by injection to provide a chemical restraint of an unruly patient. Dr. Weisser testified that the injection was being used on nearly all admitted patients. She ordered the use of it to stop. Reid admittedly allowed a patient to be given the drug cocktail after being instructed not to do so. Reid contends that Dr. K.A. Hamdan approved all the orders, but sometimes his approval would be after the fact. Dr. Weisser testified that Dr. Ham-dan had not been present at the staff meeting and was subsequently advised to stop using the injections.
 

 ¶ 13. Reid argues that two of her fellow employees committed conduct that was similar or worse than her conduct and received no reprimand. First, Reid alleges that Manette Durand, a white female, physically and verbally abused patients, wrote “cocktail” orders without authorization, and made medical-chart errors. Reid admitted that she had no personal knowledge of the allegations against Durand; her knowledge was based on what she overheard about the incidents. Durand is seventy-one years old, and she was work
 
 *826
 
 ing for the Mississippi State Hospital as a certified nurse practitioner. An investigation was conducted by the Department of Safety and Investigative Services into the accusation that Durand slapped a patient. Durand testified that she was trying to prevent a patient from spitting on two other employees, Marcellous Chatman and Sedric Mason, who were on either side of the patient. The patient began hitting his head on the arm of the chair, and Durand put her hands over his ears to hold his head. Durand testified that she did not remember slapping the patient, but she admitted that she put her hand on his cheek to turn his head. Mason testified that he did not see or hear a slap. Chat-man testified that he heard a slap. However, during the initial investigation of the matter, Chatman told investigators that he did not hear a slap. The hearing officer found his initial testimony more credible. Durand denied the allegation that she wrote orders for drug “cocktails.” She testified that she only initiated such “cocktails” when ordered by a physician.
 

 ¶ 14. Second, Reid alleges that Dr. Lillian Frankhart, a white female working as a psychologist, violated the rule against fraternizing with patients. Dr. Frankhart admitted that she loaned her personal guitar to a patient for therapeutic purposes. Reid reported Dr. Frankhart’s action to risk management. Dr. Frankhart was not disciplined. Reid argues that Dr. Frank-hart’s loaning of a guitar to a patient was equivalent to her allowing a patient to use her credit card for moving expenses.
 

 ¶ 15. Reid argues that Durand and Dr. Frankhart were similarly situated employees outside the protected group, yet they were not disciplined for their actions. Reid argues that her actions were no worse, and she was treated unfairly solely because of her race. The hearing officer found no racial discrimination against Reid. He also found that Durand and Dr. Frankhart’s actions were not comparable to Reid’s actions. He found that Reid’s actions, based on her admissions alone, were sufficient grounds for termination. The hearing officer also noted that the chief investigator assigned to this cause was African American, and many of the witnesses were African Americans.
 

 ¶ 16. Reid bore the burden of proving that similarly situated employees outside the protected class were treated more favorably. The EAB found that the employees named by Reid were not similarly situated and upheld Reid’s termination. Based on the facts presented, we find that the decision of the EAB was not arbitrary or capricious. Durand was investigated, and it was determined no further action was necessary. As for the accusation that Dr. Frankhart is a similarly situated employee, it is a stretch to compare her action of loaning a guitar to a patient to Reid’s actions of threatening patients and allowing a patient access to her credit card. We find that the EAB had substantial evidence to support its findings. This issue is without merit.
 

 ¶ 17. Before concluding we note that in its appellee brief, the State Hospital asserts that Reid’s appeal to the full EAB was time-barred. As this issue is being raised for the first time on appeal, it will not be addressed by this Court.
 
 Miss. Dep’t of Transp. v. Trosclair,
 
 851 So.2d 408, 415 (¶ 19) (Miss.Ct.App.2003).
 

 ¶ 18. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 MYERS, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND
 
 *827
 
 MAXWELL, JJ„ CONCUR. KING, C.J., CONCURS IN RESULT ONLY. IRVING, J., NOT PARTICIPATING.