# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-01494-COA

**HENRY HINTON JR. A/K/A HENRY HINTON**                    APPELLANT

**v.**

**BRIAN LADNER, WARDEN**                                                    APPELLEE

DATE OF JUDGMENT:              10/04/2016
TRIAL JUDGE:                         HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:  RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      HENRY HINTON JR. (PRO SE)
ATTORNEY FOR APPELLEE:       ANTHONY LOUIS SCHMIDT JR.
NATURE OF THE CASE:          CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                 AFFIRMED - 02/20/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND WESTBROOKS, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     Henry Hinton is an inmate in the custody of the Mississippi Department of Corrections (MDOC), confined at the Mississippi State Penitentiary (MSP). Hinton was found guilty of two rule violations for verbally engaging in bribery with a correction officer and pursuing a relationship with that correction officer. As punishment, Hinton lost privileges for one month. Hinton appealed the decision with MDOC's administrative-remedy program (ARP). Warden Brian Ladner affirmed Hinton's rule violations. Hinton then appealed to the Rankin County Circuit Court, which affirmed MDOC's decision. Hinton now appeals, and finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In 2015, Hinton was convicted in Pike County of three counts of possession of a controlled substance with the intent to distribute and one count of attempting to obtain a controlled substance. He was sentenced to serve three five-year terms and one three-year term, with the sentences running concurrently, in the custody of the MDOC.

¶3.     While an inmate at the Central Mississippi Correctional Facility, Hinton was issued two separate rule-violation reports (RVR) on February 27, 2016. In RVR No. 01553562, he was accused of verbally bribing a correction officer to obtain a slice of pizza from her. The officer stated that Hinton put a note in a box asking her to put any leftover pizza she had in the trash, and he "would be happy to dispose of it."[1] He asked her to flash his cell lights, and he would come get the pizza. At his hearing, Hinton admitted that he put the note in the box, but he claimed he did not ask for or give her anything. In RVR No. 01553563, Hinton was accused of pursuing a relationship with the same correction officer.

¶4.     At a disciplinary hearing, Hinton was found guilty of both rule violations and lost all privileges for one month. Hinton claimed that as an added punishment he was placed in a much more restrictive area the following day—a claim MDOC denies. In March 2016, Hinton filed grievances for both RVRs with MDOC's ARP, claiming the statements in the

---

[1] The note's complete text stated:

> Secrets to increase your karma! *Help the needie.* MDOC policy allows you to bring food into the facility. Policy also allows you to dispose any unwanted portion you fail to consume. You may be known as slim although you appear to eat well. Therefore any unwanted portion you don't wish to consume, simply drop it in the box. I will be happy to dispose of it via the trash for you. No harm. No foul. Quote of the Day – An older man has learn, and has the ability to keep his mouth shut.

note were taken out of context.

¶5.   In April 2016, Hinton received and acknowledged MDOC's decision. Hinton appealed MDOC's ARP decision to the Rankin County Circuit Court. MDOC responded to Hinton's appeal, stating there was substantial evidence to support the RVRs.

¶6.   In June 2016, Hinton amended his complaint, claiming his due-process right to notice was violated because he could not read his copies of the RVRs before his hearing. The MDOC filed an answer to his amended complaint denying Hinton's assertions. The MDOC denied that Hinton was transferred to a more restrictive holding area due to the RVRs, that he was punished in retaliation for "getting in [the captain's[2]] business," that he was given illegible copies of the RVRs, or that his note was taken out of context. In October 2016, the circuit court affirmed MDOC's decision. Hinton timely appealed.

## STANDARD OF REVIEW

¶7.   This Court will not disturb the decision of an administrative agency, such as the MDOC, unless the decision was "unsupported by substantial evidence, arbitrary or capricious, beyond the agency's scope or powers, or violative of the constitutional or statutory rights of the aggrieved party." *Taylor v. Petrie*, 41 So. 3d 724, 727 (¶8) (Miss. Ct. App. 2010) (quoting *Edwards v. Booker*, 796 So. 2d 991, 994 (¶10) (Miss. 2001)). "There is a rebuttable presumption which favors the agency's decision and the challenging party has the burden of proving the contrary." *Ross v. Epps*, 922 So. 2d 847, 849 (¶4) (Miss. Ct. App. 2006) (citing *State Bd. of Pub. Accountancy v. Gray*, 674 So. 2d 1251, 1253 (Miss. 1996)).

---

[2] Hinton claims Captain Mitchell, the disciplinary officer, orchestrated his transfer.

## ANALYSIS

### I.      MDOC's Decision

¶8.      Hinton argues there was not substantial evidence to support MDOC's decision that he violated MDOC rules against bribery and pursuing a relationship. We review MDOC's decision under the substantial-evidence standard. *Smith v. Wesley*, 157 So. 3d 860, 861 (¶8) (Miss. Ct. App. 2015). "Substantial evidence is not an especially large quantum. . . . [It] may be less than a preponderance, but must be more than a scintilla, and must . . . make any conclusion based on that evidence a reasonable one." *Miss. Dep't of Transp. v. Rutland*, 965 So. 2d 696, 703 (¶12) (Miss. 2007) (quoting *Miss. Dep't of Corr. v. Smith*, 883 So. 2d 124, 129 (¶15) (Miss. Ct. App. 2004)). "Deference is afforded 'to the fact-finding role of the administrative agency and the hearing officer's findings.'" *Smith*, 157 So. 3d at 862 (¶8) (quoting *Johnson v. Miss. Dep't of Corr.*, 682 So. 2d 367, 370 (Miss. 1996)).

¶9.      We find that Hinton failed to prove MDOC's decision was not supported by substantial evidence. Hinton claims his note was taken out of context, and he did not bribe anyone for anything, but merely offered to dispose of the pizza in the trash. He also denies attempting to pursue a relationship with the female officer, arguing that the note was written to apply to anyone.

¶10.      We are not persuaded by these arguments. Hinton admitted to writing the note to the female officer in the tower, which is inappropriate communication. A copy of the note was admitted into evidence, in which Hinton was offering something of value—to take out the officer's trash for her to obtain the pizza. He admitted in the hearing that his motive was to

4

sneak back and retrieve the pizza from the trash. These actions also establish an inappropriate relationship with an officer that compromises the security of MDOC's facility. Accordingly, MDOC's decision was supported by substantial evidence.

## II. Constitutional Issues

¶11. Hinton raises several constitutional issues, such as due process and free speech. First, Hinton argues his due-process right to notice was violated because his copies of the RVRs were illegible.[3] Thus, he states he did not know the charges against him at the hearing. Additionally, Hinton argues his due-process right to be heard was violated because he was not allowed to make statements in his own defense during the hearing.

¶12. Although Hinton argues his due-process rights were violated in numerous ways, as he also notes, not all administrative disciplinary actions are subject to due-process analysis. It is well established that punishment of temporary loss of privileges is not generally considered a constitutionally protected liberty interest. *Mixon v. Enlers*, 90 So. 3d 635, 637 (¶6) (Miss. Ct. App. 2012) (citing *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)). Accordingly, Hinton has no liberty interest that could give rise to a legitimate due-process claim.

¶13. To circumvent this bar, Hinton contends that his prison transfer immediately after his disciplinary hearing was part of his punishment for his RVRs, which violated his due-process rights. MDOC denies this allegation, and Hinton provides no proof in support. Additionally,

---

[3] On April 20, 2016, Hinton wrote a letter to MDOC's ARP claims adjudicator requesting another copy of the RVRs because Hinton could not read the copies he was provided at the hearing. In May 2016, the MDOC responded that copies are not provided for prisoners.

Hinton's due-process arguments are without merit. Even though the copies of Hinton's two RVRs in the record are of poor quality, Hinton complained of it over a month after the disciplinary hearing and receipt of MDOC's decision against him—not when the RVRs were first issued. Further, Hinton did not request any evidence be introduced at the hearing to refute the RVRs or request any witnesses. Therefore, we cannot say that Hinton was denied due process, as he was provided and attended a fair and impartial disciplinary hearing where he was made aware of the nature of the charges against him.

¶14. Finally, Hinton claims prison officials retaliated against him for exercising his First Amendment right to free speech in prison by writing the note. He argues the note did not violate any specific MDOC rules or policies and was not directed at anyone in particular.

¶15. Again, we are not persuaded by this argument. There was substantial evidence to support MDOC's decision upholding Hinton's RVRs, which cite specific MDOC rule violations. Additionally, Hinton admitted to writing the note, even if he refuted any violative intent.

¶16. Accordingly, we affirm the circuit court's judgment affirming MDOC's decision.

¶17. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

6