# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-SA-01646-COA

OLA C. KIRK                                                                     APPELLANT

v.

MISSISSIPPI DEPARTMENT OF PUBLIC                                    APPELLEE
SAFETY

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2015 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JOHN M. MOONEY JR. |
| ATTORNEY FOR APPELLEE: | JOHN G. (TRAE) SIMS III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED ORDER OF THE EMPLOYEE APPEALS BOARD DENYING APPELLANT'S GENDER-DISCRIMINATION CLAIM |
| DISPOSITION: | AFFIRMED - 05/30/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

WILSON, J., FOR THE COURT:

¶1.     In June 2013, the Mississippi Department of Public Safety (MDPS) announced that there was an opening for the position of lieutenant in the driver services division of the Mississippi Highway Safety Patrol (MHSP). MDPS interviewed six qualified applicants for the position and selected Master Sergeant Anthony Cunningham—a 51-year-old African-American male with 26-plus years of service at MDPS—for the promotion. Master Sergeant Ola Kirk—a 57-year-old African-American female with 25.5 years of service at MDPS—was

identified as the first "alternate choice" for the promotion, but she was not promoted.

¶2.     Kirk filed a grievance, alleging that she was denied the promotion because of her sex. MDPS denied the grievance, and Kirk appealed to the Mississippi Employee Appeals Board (EAB).  Following a two-day hearing before an EAB hearing officer, the hearing officer entered an order denying Kirk's claim.  The hearing officer found that MDPS had articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham rather than Kirk.  The hearing officer further found that Kirk failed to meet her burden of proof that MDPS's stated reason was a pretext for intentional discrimination.  The en banc EAB affirmed the hearing officer's findings and decision, and the Hinds County Circuit Court subsequently affirmed the decision of the EAB.

¶3.     On appeal to this Court, Kirk argues that MDPS failed to articulate a legitimate, nondiscriminatory reason for its decision.  She also argues that she was clearly more qualified than Cunningham, that MDPS's stated reason for promoting Cunningham was a pretext for intentional discrimination, and that the EAB's decision is not supported by substantial evidence.  As to the former issue, we agree with the EAB that MDPS's stated reason for its decision—that Cunningham scored higher than Kirk on an interview designed to test the candidates' knowledge of subjects relevant to the open position—is a legitimate and nondiscriminatory reason for an employment decision.  On the latter issue, the EAB is the trier of fact and the judge of witnesses' credibility, and we find that its decision denying Kirk's claim is supported by substantial evidence.  Accordingly, we affirm.

2

## FACTS AND PROCEDURAL HISTORY

¶4. In May 2013, Lieutenant Anthony Wright retired from the driver services division of MDPS. On June 7, 2013, MDPS distributed a "Position Open Notice" seeking applications to fill Wright's position. The notice stated that "[a]ny sworn officer within the [MHSP] meeting the qualifications [could] apply." The primary minimum qualifications for the position were seven years of service as a sworn officer with MDPS, including at least two years "in line or functional supervision as a master sergeant." The notice stated that there would be oral interviews for qualified applicants, and it identified potential sources of interview questions, including laws and policies related to the driver services division.

¶5. Six applicants were deemed qualified and invited to oral interviews, which were held on July 17, 2013. The candidates included Kirk, Cunningham, and four other men. Kirk and Cunningham are both African-American. Kirk was fifty-seven years old at the time of the interviews, whereas Cunningham was fifty-one. Both Kirk and Cunningham have four-year college degrees, and both have been employed by MDPS since 1987. Both have served in supervisory roles and served as acting lieutenant in the driver services division subsequent to Wright's retirement. Kirk was promoted to master sergeant in 2002, while Cunningham was promoted to that rank on April 1, 2010. Cunningham had received five work-related commendations, while Kirk had received one. The other four candidates had between seventeen and twenty-six years of service at MDPS and between six and thirteen years of service at the rank of master sergeant.

3

¶6.     The director of the driver services division, Major Christopher Gillard,[1] chaired the interview panel. Captain Printiss Parker and Lieutenant Jay Kelly, who also serve in the driver services division, were also on the panel. The panel drafted a list of six questions to ask the applicants during their oral interviews. All six questions related to the operations of the driver services division or laws, policies, or procedures applicable to the division. The questions were not distributed to any of the candidates prior to the interviews.

¶7.     At the beginning of each candidate's interview, Gillard gave a general overview of how the interview would proceed, and the panel members then took turns asking the six questions. The panel members scored each candidate's answer to each question on a scale of 1 to 5. After each candidate left the room, the panel would compare scores and discuss the reasons for any differences of more than one point on a particular question. The candidate's total score was then tallied based on each panel member's scores.

¶8.     After the interviews, Gillard provided Colonel Donnell Berry, Director of the MHSP, with a list of the top three applicants for the position. Gillard identified Cunningham as his "first choice" for promotion and Kirk as his first "alternate choice." Gillard ranked the candidates based solely on their interview scores. Cunningham received the highest score (73 out of 90 possible points), while Kirk received the second-highest score (64). Berry accepted Gillard's recommendation and promoted Cunningham.

¶9.     On July 24, 2013, Kirk filed a grievance with MDPS alleging that she had been denied

---

[1] Major Gillard subsequently was appointed Assistant Commissioner of Public Safety and Director of the MHSP and promoted to the rank of colonel.

the promotion based on her race, age, or gender. After MDPS denied her claim, Kirk appealed to the EAB. A hearing was held before an EAB hearing officer on March 7 and August 21, 2014. Kirk, Cunningham, Gillard, Parker, Kelly, and Berry all testified. During the hearing, Kirk's attorney stated that she was only pursuing her claim of gender discrimination, as Cunningham was also African-American and at least forty years of age. MDPS maintained that Cunningham was promoted because he scored higher on his interview than Kirk, not because of discrimination.

¶10. At the hearing, Gillard testified that the promotion was governed by MDPS General Order No. 22/02, which governs "appointments" to "specialized positions." The Order states that its purpose "is to provide the Director of [MHSP] and the Commissioner of Public Safety necessary . . . flexibility in filling staff, technical, and special duty positions taking into account a candidate's skill, knowledge, and professional experience." The Order provides that candidates for such positions must hold the rank of master sergeant or higher and be eligible for promotion to lieutenant. The Order further provides that, after reviewing candidates' qualifications, the Director of MHSP, with the approval of the Commissioner, will make appointments to fill specialized positions. Finally, the Order provides that, notwithstanding any other provisions of the Order or General Order No. 22/01,[2] the Commissioner, after consulting with the Director of MHSP, "shall have the ability to

---

[2] General Order No. 22/01 establishes generally applicable procedures for promotion of sworn personnel within MDPS/MHSP but does not govern appointments to specialized positions that are subject to General Order No. 22/02.

promote in rank sworn personnel possessing skill, knowledge, and professional experience to speciality positions."

¶11. Gillard testified that applicants who satisfied the minimum qualifications set forth in the open-position notice were invited to interview. He also testified that his recommendation to Colonel Berry was based solely on the candidates' interview scores because all the candidates interviewed "had already met the minimum qualifications." Gillard testified that the panel ranked Cunningham first and Kirk second based on their interviews and not because of gender, age, or race. MDPS stipulated, and all of its witnesses testified, that Kirk is an excellent employee and was qualified for the position. MDPS simply defended its decision to promote Cunningham based on his superior interview scores.

¶12. The interview questions and the interviewers' scoring sheets were introduced into evidence. Cunningham received a higher overall score than Kirk primarily because the interviewers scored his answers higher on question 2, which concerned eligibility for a learner's permit, and question 4, which concerned permanent disability cards. The comments on the interviewers' scoring sheets are limited. The interviewers noted that Kirk "did not answer questions completely" or "fully." The interviewers noted Cunningham's "knowledge and experience of driver services."

¶13. Gillard and Parker both testified that Kirk received a low score on question 2 because she started to answer correctly but then changed her answer and answered incorrectly. Gillard and Parker both testified that Kirk received a low score on question 4 because she

stated that she did not know the answer. Kelly testified on the second day of the EAB hearing, thirteen months after the interviews. He could not recall the specifics of the candidates' answers and could only testify generally as why he would have scored an answer lower or higher. Gillard testified that, immediately after the interviews, he "personally" "shredded" any additional notes taken by the interviewers. He testified that he did so because the questions might be used again, and he did not want the answers to be disclosed. Gillard, Parker, and Kelly testified that the interview process for this promotion was consistent with MDPS's usual practices. All denied that any candidate's gender, race, or age influenced the interview process or their scoring.

¶14.   Kirk testified that she believed that she was the most qualified candidate, that she doubted that Cunningham could have scored higher than her on a fair test, and that she believed she should have been promoted rather than him. However, she acknowledged that she did not hear Cunningham's answers to the questions. She also acknowledged that the test questions were fair and "all . . . came straight from the policy and procedure book." She also admitted that she was concerned about whether she answered question 4 correctly. Kirk also testified that there should have been a female on the interview panel, although she acknowledged that there were no other females in the driver services division. Kirk testified that she believed she had "been discriminated against by [MDPS]," but she was unwilling to say that any of the interviewers or Colonel Berry were "sexist." When pressed, she speculated that Parker had discriminated against her, but only because he scored her lower

7

than the other interviewers. Although all three interviewers scored Cunningham higher than Kirk, Kirk believed that Parker "was not fair about [her] grading."

¶15. Following the hearing, the EAB hearing officer permitted the parties to submit briefs and then entered an order with detailed findings of fact and conclusions of law. He found that Kirk had established a prima facie case of discrimination because she was a member of a protected class (a female), she applied for and was qualified for the promotion, she did not receive the promotion, and a person outside of the protected class (Cunningham, a male) received the promotion. However, the hearing officer also found that MDPS articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham (his higher interview scores). Finally, the hearing officer found that Kirk failed to satisfy her burden of proof and persuasion that she was denied the promotion because of her gender and that MDPS's stated reason for promoting Cunningham was a pretext. Accordingly, the hearing officer dismissed Kirk's claim with prejudice.

¶16. Kirk appealed the hearing officer's decision, but the en banc EAB affirmed the hearing officer's findings and conclusions. Kirk then appealed to circuit court, arguing that the EAB's decision was arbitrary and capricious, was not supported by substantial evidence, and violated her constitutional and statutory rights. However, the circuit court affirmed the EAB's decision. Kirk again filed a timely notice of appeal. On appeal, Kirk identifies six issues, all of which relate to her two basic arguments that MDPS failed to articulate a legitimate, nondiscriminatory reason for its decision to promote Cunningham and that she

8

met her burden of proof and persuasion that MDPS's stated reason for its decision was a pretext for discrimination. We address Kirk's arguments below.

## DISCUSSION

¶17. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee because of the employee's gender. 42 U.S.C. § 2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (quoting *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004)). Mississippi law also prohibits intentional discrimination against a state service employee because of the employee's gender. Miss. Code Ann. § 25-9-149 (Rev. 2010); *see Miss. Emp't Sec. Comm'n v. Collins*, 629 So. 2d 576, 581 (Miss. 1993).

¶18. Kirk's claim of gender discrimination is subject to "a precise scheme, or allocation, of the burdens of proof (both production and persuasion)." *Cash Distrib. Co. v. Neely*, 947 So. 2d 286, 292 (¶21) (Miss. 2007). This analysis, often referred to as the "*McDonnell Douglas* burden-shifting framework," proceeds in three steps. *See id.* at 292-93 (¶¶22-23) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)); *see Alvarado*, 492 F.3d at 611 (recognizing that the same framework applies to gender-discrimination claims under Title VII when there is "no direct evidence of discrimination"); *Miss. Dep't of Human Servs. v. Baum*, 730 So. 2d 58, 63 (¶¶18-19) (Miss. 1998) (applying the same framework to a state employee's grievance

9

alleging discrimination); *Reid v. Miss. State Hosp./Miss. Dep't of Mental Health*, 53 So. 3d 823, 824-25 (¶8) (Miss. Ct. App. 2011) (same). First, the employee must establish a prima facie case of discrimination. This required Kirk to show that she was a member of a protected class, that she was qualified for the promotion at issue, that she was not promoted, and that a person outside her protected class was promoted. *See Alvardo*, 492 F.3d at 611. MDPS does not dispute that Kirk established a prima facie case, which created an initial "presumption" of "impermissible discrimination." *Neely*, 947 So. 2d at 297 (¶37).

¶19. In the second step of the *McDonnell Douglas* framework, the employer bears "the burden of producing an explanation to rebut the prima facie case—i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (quotation marks omitted). The employer's burden at this stage is a "burden of *production*" only and "can involve no credibility assessment." *Id.* at 507, 509. This burden of production "necessarily *precedes* the credibility-assessment stage." *Id.* at 509. The defendant's burden at the second step is only "to introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.*

¶20. The third step of the *McDonnell Douglas* framework is the "credibility-assessment stage." *Id.* If the defendant carries its step-two burden of production, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

10

*Neely*, 947 So. 2d at 293 (¶23) (quoting *Burdine*, 450 U.S. at 253). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

¶21. The "trier of fact" in this case was the EAB. On appeal from a decision of the EAB, a "reviewing court must affirm the [EAB] if [its] decision was (1) supported by substantial evidence; (2) not arbitrary or capricious; (3) within the scope or power of the agency; and (4) not a violation of the aggrieved party's constitutional or statutory rights." *Ray v. MDPS*, 172 So. 3d 182, 187 (¶15) (Miss. 2015). "[The Supreme] Court has held that substantial evidence means evidence which . . . affords a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* at 187 (¶16) (quotation marks omitted). "Substantial evidence exists so long as there is evidence that a reasonable mind might accept as sufficient to support a conclusion." *Id.* "The reviewing court is not authorized to substitute its judgment for that of the [EAB] where there is substantial (that is, more than a scintilla of) evidence to support the finding." *Id.* (quoting *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992)) (brackets omitted). The reviewing court also must bear in mind that "[t]he EAB is the trier of fact as well as the judge of the witnesses' credibility." *Id.* at 188 (¶20) (quotation marks omitted); *accord, e.g.*, *Miss. Dep't of Wildlife, Fisheries & Parks v. Bradshaw*, 196 So. 3d 1075, 1082-83 (¶19) (Miss. Ct. App. 2016).

¶22. Below, we first address whether MDPS met its step-two burden of production, i.e., its burden to articulate a legitimate, nondiscriminatory reason for its decision to promote

11

Cunningham rather than Kirk. We then consider whether there is substantial evidence to support the EAB's finding, as the trier of fact, that Kirk failed to meet her ultimate burden of proving that MDPS's stated reason was a pretext and that MDPS intentionally discriminated against her and refused to promote her because of her gender.

## I. MDPS articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham rather than Kirk.

¶23. MDPS's stated reason for promoting Cunningham rather than Kirk is that he scored higher on his interview, which tested the candidates' knowledge of subjects related to the open position of lieutenant in the driver services division. In support, MDPS introduced evidence of the interview questions that candidates were asked and interviewers' scoring sheets. As discussed above, members of the interview panel also testified as to why Kirk received a lower score on two questions, namely, that she answered one question incorrectly after changing her answer, and she did not know the answer to another question. Kirk acknowledged that the interview questions were fair and tested knowledge relevant to the open position, and she also admitted that she was concerned about one of her answers for which she received a low score. As noted above, Kirk received the second-highest score of the six candidates that were interviewed; however, Cunningham received the highest score, and MDPS maintains that he was promoted for that reason.

¶24. It should be evident that the relative quality of candidates' answers to interview questions designed to test their knowledge relevant to the open position is a legitimate, nondiscriminatory reason for an employer's decision. Caselaw recognizes this common-

sense proposition. *See, e.g.*, *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195, 203-04 (4th Cir. 2011); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 616 (6th Cir. 2003). Therefore, MDPS met its step-two "burden of *production*." *Hicks*, 509 U.S. at 507.

¶25.    To reiterate, this step of the *McDonnell Douglas* framework "can involve no credibility assessment." *Id.* at 509. The defendant's only burden is "to introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* If the trier of fact believed that MDPS promoted Cunningham because he provided the best answers to questions designed to test the candidates' knowledge of relevant subjects, then obviously that would permit a conclusion that there was a nondiscriminatory reason for MDPS's decision to promote Cunningham rather than Kirk.

¶26.    It is true, as Kirk and the dissent argue, that a "subjective reason" for an employer's decision "is a legally sufficient, legitimate, nondiscriminatory reason" only "if the [employer] articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc). MDPS presented a sufficiently specific basis for its decision in this case. In *Chapman*, the en banc Eleventh Circuit held that the employer met its burden based on interviewers' testimony that the plaintiff did not give "sharp" or "concise" answers, "did not take an aggressive approach in asking . . . questions about the position," and "wasn't very clear about" his reasons for leaving prior jobs; and that the employee who was promoted just "made a better presentation

13

of himself and his skills." *Id.* at 1035. One interviewer testified that he did not "have an answer to" why one candidate did better than the other; he "just . . . felt [he] had more confidence in [the promoted employee] in the way he presented his work history." *Id.*

¶27. The reasons provided by MDPS in this case were at least as clear and specific as those provided in *Chapman*. Again, MDPS introduced evidence of the interview questions asked, which Kirk admitted were fair and relevant, and evidence that Kirk answered two questions incorrectly. MDPS provided a specific, nondiscriminatory reason for its decision to promote Cunningham, and Kirk had an opportunity to respond and offer evidence that it was a pretext. Whether MDPS's proffered reason was the true reason for its decision or a pretext was then an issue for the trier of fact to decide.

¶28. For the same reason, Kirk's and the dissent's reliance on *Alvarado v. Texas Rangers*, *supra*, is misplaced. In *Alvardo*, the employer relied on interview scores but offered no "explanation []or evidence of how or why the interviewers arrived at those scores." *Alvarado*, 492 F.3d at 617. Unlike this case, the employer in *Alvarado* could not "point[] to any . . . testimony by the [interviewers] that would shed any light on why they scored [the plaintiff] and the other candidates the way they did." *Id.* Here, MDPS provided not only the candidates' scores but also reasons why Kirk scored lower than Cunningham. This is sufficient to distinguish *Alvarado* and to meet the step-two burden of production. *See Harris*, 429 F. App'x at 204. At step two of the *McDonnell Douglas* framework, the employer's only burden is to provide a nondiscriminatory explanation for its decision.

14

¶29.    Before moving to step three of the *McDonnell Douglas* framework, we briefly address

two additional points that the dissent raises under the heading of step two.  First, the dissent

makes repeated claims along the lines that MDPS "completely failed to follow General Order

22/02." *Post* at (¶72).  In support of these claims, the dissent cites the Order's statement that

the Commissioner of MDPS, after consulting with the Director of MHSP, "shall have the

ability to promote in rank sworn personnel possessing skill, knowledge, and professional

experience to speciality positions." *Post* at (¶45).  The dissent follows with conclusory

assertions that the selection process used in this case did not achieve this end.  However,

nothing in the text of 22/02 purports to *prohibit* the process used by MDPS in this case.

Indeed, reliance on minimum *experience* requirements followed by a test of the candidates'

*knowledge* relevant to the vacant position is entirely consistent with the stated purpose of

22/02. Moreover, Kirk's claim for relief before the EAB was not that MDPS failed to follow

agency procedures.  Rather, she alleged intentional discrimination based on gender.[3]

Therefore, even if MDPS somehow deviated from 22/02, that issue would be, at most,

relevant to the step-three question whether its stated reason for the promotion was a pretext

for illegal discrimination.  A deviation from agency procedures does not transform a logically

and facially nondiscriminatory reason into a discriminatory one.

¶30.    The dissent also complains that MDPS's interview process "lacked safeguards," "had

---

[3] At the conclusion of the EAB hearing, the hearing officer specifically asked: "So the only issue before the [EAB] now is the gender discrimination?"  Kirk's counsel confirmed that this was correct.

no scoring rubric," and relied on "subjective grading." *Post* at (¶¶41, 59). However, there is nothing inherently wrong or discriminatory about any of these things. Every day, all kinds of employers make employment decisions based on "subjective" evaluations without scoring rubrics or other "safeguards." For example, that is what judges do when hiring law clerks and other staff. Not every employment decision is reducible to a multiple choice test or a purely objective scoring system.[4] To be clear, this is not to dismiss the possibility that subjectivity, informality, or a lack of documentation may, in some cases, serve to obscure invidious discrimination. However, this possibility is an issue for the *trier of fact* at the *third step* of the *McDonnell Douglas* framework. A determination that Cunningham's answers to interview questions demonstrated greater knowledge of the relevant subject matter is a legitimate, nondiscriminatory reason even if it depends on interviewers' subjective assessments of the candidates' answers.

¶31.  In summary, "[b]y producing *evidence* (whether ultimately persuasive or not) of nondiscriminatory reasons, [MDPS] sustained [its] burden of production," which brings us to the end of step two. *Hicks*, 509 U.S. at 509. Step two of the *McDonnell Douglas* framework "can involve no credibility assessment," "[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *Id.* "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied

---

[4] At the hearing before the EAB, counsel for MDPS explained that a written test is not used for a "specialized" position such as the one at issue here because of the significant cost associated with developing such a test.

by a suspicion of mendacity) may . . . suffice to show intentional discrimination" and "*permit the trier of fact to infer the ultimate fact of intentional discrimination.*" *Id.* at 511. However, that is an issue for the trier of fact under step three of the framework. *Id.*

## II. The EAB's decision is supported by substantial evidence.

¶32. In an employment discrimination case, the ultimate question for the trier of fact is whether the plaintiff has proven, by a preponderance of the evidence, that the employer's stated reason for the adverse employment decision was a pretext for impermissible discrimination. *See Neely*, 947 So. 2d at 293 (¶23). Thus, the basic issue for the trier of fact is whether the employer's explanation for its decision, as presented through witnesses and other evidence, is credible and believable. *See Hicks*, 509 U.S. at 507-11. When a state-service employee appeals to the EAB, "*[t]he EAB is the trier of fact as well as the judge of the witnesses' credibility.*" *Ray*, 172 So. 3d at 188 (¶20) (emphasis added; quotation marks omitted). A reviewing court may not "reweigh[] the evidence" or "substitut[e] its own judgment" for that of the EAB; rather, the court must defer to the EAB's factual findings and affirm if there is "substantial evidence" in the record to support its decision. *Id.* at (¶21).

¶33. In this case, the findings and decision of the EAB are supported by substantial evidence. All three members of the MDPS interview panel testified that Cunningham scored higher than Kirk on the interview and was recommended for promotion because he provided superior answers to the interview questions—and not because of Kirk's gender. The EAB, not this Court, is the judge of these witnesses' credibility. The hearing officer also found that

17

Kirk's qualifications did not compel or support an inference of discrimination because "Cunningham also had significant qualifications and experience." The hearing officer observed that "[t]he ultimate question in every employment discrimination case is whether the [p]laintiff was the victim of discrimination." On this issue, the hearing officer found that Kirk failed to meet her burden of proof that MDPS's stated reason for promoting Cunningham "was untrue." And the hearing officer found that "Kirk . . . failed to meet her burden of proof that she was intentionally denied the . . . promotion because of her sex." The EAB affirmed the hearing officer's findings and decision, and we must also affirm the decision of the EAB, as its decision is supported by substantial evidence.[5]

¶34. Kirk argues that her qualifications compel an inference of discrimination, but the hearing officer and the EAB found otherwise, and the EAB's decision is supported by substantial evidence. To prove pretext based on qualifications, the plaintiff must show that she was "'clearly better qualified' (as opposed to merely better or as qualified) than the employee[] who [was] selected [for promotion]." *Moss v. BMC Software Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). This requires the plaintiff to prove that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.* at 923.

---

[5] If there is a conflict between the findings or decision of the hearing officer and the findings or decision of the en banc EAB, a reviewing court must review and defer to the findings and decision of the en banc EAB. *See Miss. Dep't of Transp. v. Rutland*, 965 So. 2d 696, 702-03 (¶11) (Miss. Ct. App. 2007). However, we also defer to findings of the hearing officer that, as in this case, were affirmed by the en banc EAB. *See id.*

¶35.    MDPS stipulated that Kirk—who the panel ranked second of the six candidates interviewed for the position—was qualified and an exceptional employee.  MDPS simply defended its decision to hire Cunningham based on his superior interview.  The candidates' resumes were similar.  Both have college degrees and have been employed by MDPS since 1987.  Both served as acting lieutenant in the driver services division following Lieutenant Wright's retirement, and both have served in supervisory roles.  Kirk was promoted to master sergeant in 2002, whereas Cunningham was promoted in 2010; however, as the hearing officer noted, Cunningham has five work-related commendations, whereas Kirk has only one.  Either candidate was qualified and could have been selected for the position.  There is substantial evidence to support the hearing officer's finding, affirmed by the EAB, that Kirk was not "clearly" more qualified than Cunningham.[6]

¶36.    Finally, we address Kirk's argument that she was entitled to an "adverse inference" because MDPS's failure to retain interview notes allegedly violated an EEOC regulation.[7] MDPS retained and produced copies of the interview questions and the scoring sheets

---

[6] In making this argument, Kirk places great emphasis on the fact that she had served as a master sergeant longer than Cunningham.  However, the third-rated candidate, a male, had served as a master sergeant longer than either Kirk or Cunningham.

[7] *See* 29 C.F.R. § 1602.14 ("Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later.").

completed by the interviewers; however, as noted above, Major Gillard testified that he shredded any handwritten notes taken by the interviewers because the interview questions might be reused and he did not want any answers disclosed. The notes that were destroyed were described as "shorthand" or "scratch" notes, and Colonel Berry testified that agency policy did not require Gillard to retain the notes. Kelly testified that he did not recall taking any notes. The en banc EAB rejected Kirk's argument based on the notes, affirming the hearing officer's implicit finding that their destruction was not "significant."

¶37. For two reasons, we conclude that Kirk's argument is without merit. First, we agree with the United States Court of Appeals for the Seventh Circuit that "[e]mployers are not required to keep every single piece of scrap paper that various employees may create during the termination process"—or, in this case, the promotion process. *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558-59 (7th Cir. 2001). "It is sufficient that the employer retains only the actual employment record itself, not the rough drafts or processes which may lead up to it." *Id.* at 759. In *Rummery*, the Seventh Circuit held that the employer complied with the EEOC regulation by retaining "final ranking sheets" that aggregated employees' rankings by multiple managers who had evaluated their performance. *Id.* at 758-59. The court held that the employer was not required to retain "evaluation notes" that were merely "informal notes" that individual evaluators "may have taken." *Id.* Likewise in this case, MDPS retained the interview questions and score sheets; we do not believe that federal law required the agency to retain "scratch" or "shorthand" notes that may have been taken by interviewers.

20

¶38. Second, as noted above, the EAB acknowledged Kirk's argument but did not find it persuasive. In *Thomas v. Isle of Capri Casino*, 781 So. 2d 125 (Miss. 2001), our Supreme Court held that a casino patron was entitled to the benefit of an adverse inference in a case involving a disputed slot machine jackpot because the casino had destroyed a central processing unit that would have conclusively resolved the dispute. *Id.* at 133-34 (¶¶36-43). Nonetheless, the Court still affirmed the Gaming Commission's decision rejecting the patron's claim because there was "ample secondary evidence" to support the decision. *Id.* at 134 (¶43). This included witnesses "who offered conflicting testimony," and, "as the finder of fact," the Commission "was responsible for judging their veracity." *Id.* at (¶44). The same is true in this case. The EAB affirmed the hearing officer's implicit finding that the shredding of the notes was not "significant." Further, there was substantial evidence to support the EAB's ultimate finding that Kirk failed to meet her burden of proving that MDPS's stated reason was a pretext for intentional discrimination.

## CONCLUSION

¶39. At step two of the *McDonnell Douglas* framework, MDPS articulated a legitimate, nondiscriminatory reason for its decision to promote Cunningham rather than Kirk. Thus, at step three of the framework, the trier of fact had to determine whether Kirk met her burden of proving that the agency's stated reason was a pretext for intentional discrimination. The EAB was the trier of fact and the judge of witnesses' credibility in this case. There is

21

substantial evidence to support its findings and decision denying Kirk's claim.[8]  Therefore, we affirm.

¶40.  **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., BARNES, ISHEE AND FAIR, JJ., CONCUR.  CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., AND WESTBROOKS, J.  GREENLEE, J., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING:**

¶41.  I respectfully dissent from the majority's opinion.  Upon review, I find that MDPS acted arbitrarily by failing to follow its own applicable General Order 22/02 to promote

---

[8] In a footnote, the dissent notes that a jury verdict and judgment were entered in favor of Kirk in federal district court on a claim that appears to be similar, if not identical, to the claim at issue in this appeal.  *Post* at n.10.  MDPS subsequently filed a motion for judgment notwithstanding the verdict or a new trial, which remains pending.  These documents are publicly available.  However, there is nothing in the record in this appeal about the federal case, and neither party has raised any issue or made any argument regarding the preclusive effects of the federal case on this case (or vice versa).  The mere fact that a federal jury returned a verdict in Kirk's favor is not inconsistent with our decision in this appeal.  For the reasons explained above, there was sufficient evidence for the fact-finder in this case, the EAB, to find that Kirk did not meet her burden of proving intentional discrimination.  Our opinion does not hold that to be the *only* conclusion that the evidence permits; we hold only that it is a *permissible* conclusion that is supported by substantial evidence.  The fact-finder in the federal case, the jury, apparently reached a different conclusion based on the evidence presented at trial in that case.  But even assuming that the federal verdict will be upheld and that it was based on the exact same evidence presented to the EAB, it is certainly possible for rational fact-finders to draw different conclusions from the same evidence.  That is the very reason for having a trial or, as in this case, an administrative hearing.  Indeed, if the evidence permitted only one conclusion, there would have been no need for a jury trial on liability in the federal case.

someone to fill the vacant lieutenant position.[9]  Instead of following General Order 22/02, the record shows that MDPS used an unauthorized procedure of an interview panel and an oral exam comprised of six objective technical questions to determine who received the lieutenant promotion.  The record also shows that MDPS used General Order 22/01, instead of General Order 22/02, to apply a minimum-requirement standard.  Moreover, the record demonstrates that MDPS's unauthorized technical-interview exam lacked safeguards to provide a sufficient factual basis for the agency's subjective promotional decision.  In addition, the record reflects that the oral-technical-question exam had no scoring rubric to show how the applicants' interview answers correlated with the correct answers for each question.  Thus, each interviewer was left on his own to subjectively score the correctness of each question.  Furthermore, the record reflects that the interviewers' notes were destroyed following the completion of the interview process.  As a result, I find that the EAB's ruling lacked the support of substantial evidence and that MDPS acted arbitrarily and capriciously by failing to follow its own General Order 22/02 in reaching the promotional decision.  I would therefore reverse the circuit court's judgment upholding MDPS's nonpromotion of Kirk and render a judgment in Kirk's favor.[10]  In so doing, I would order MDPS to promote Kirk to lieutenant.

[9] *See Ray v. Miss. Dep't of Pub. Safety*, 172 So. 3d 182, 187 (¶¶15-16) (Miss. 2015) (stating that the appellate courts will reverse an agency decision not supported by substantial evidence).

[10] *See and compare Kirk v. Miss. Dep't of Pub. Safety*, No. 3:14-CV-00537-WHB-RHW (S.D. Miss. Feb. 1, 2017) (jury verdict entered in federal court in favor of Kirk).

¶42. At the end of May 2013, Lieutenant Wright retired from the driver-services division of MDPS. On June 7, 2013, MDPS posted a notice to fill the vacant lieutenant position. To apply for the position, applicants had to meet the following minimum requirements: (1) graduate from a standard four-year high school or the equivalent; (2) complete the MHSP Cadet Training School; and (3) possess seven years of experience "as a sworn officer with the [MDPS/MHSP], of which two . . . years must have been in[-]line or functional supervision as a [m]aster [s]ergeant."

¶43. Kirk was among the individuals who applied for the promotion, and she was the only female applicant for the position. Kirk, Cunningham, and several other master sergeants each served as the acting lieutenant prior to and after the vacancy for the lieutenant position. At the time of the applicant interviews for the vacant lieutenant position, Kirk was serving as the acting lieutenant. As the record reflects, she had been employed with MDPS since 1987 and had served as a master sergeant for eleven years prior to seeking the lieutenant promotion.

¶44. Testimony presented at the EAB hearing on Kirk's appeal reflected that, during the relevant time period, MDPS had two general orders that governed promotions—General Order 22/01 and General Order 22/02. General Order 22/01 provided a two-step testing procedure for the merit-based promotions of sworn personnel within MDPS and MHSP. The first step, the screening phase, included the following: (1) a written exam; (2) an oral interview; and (3) the applicant's experience and education. The second step, the

24

appointment-board phase, consisted of an interview with a three-member board. General Order 22/01 stated that, to be eligible to test for a promotion to the rank of lieutenant, an applicant had to serve for seven years, with two of those years being served as a master sergeant.

¶45. In contrast to General Order 22/01's governance of merit-based promotions for sworn personnel, General Order 22/02 set forth the selection procedure for specialized positions. General Order 22/02 provided:

A. Candidates for a specialized position must hold the rank of [m]aster [s]ergeant or higher and be eligible to qualify as a [l]ieutenant or higher.

B. After reviewing the qualifications of the candidates, the Director of the Office of [MHSP,] with the approval of the Commissioner of [MDPS,] will appoint the candidate to fill the position.

C. Notwithstanding the provisions of General Order 22/01 or this Order, the Commissioner of [MDPS] shall have the ability to promote in rank sworn personnel possessing skill, knowledge[,] and professional experience to specialty positions, such as but not limited to, those listed above at his/her discretion after consulting with the Director of [MHSP.]

¶46. During the EAB hearing, Major Gillard testified that General Order 22/02 applied to the vacant lieutenant position in the driver-services division because the position was a "specialized position." The hearing officer agreed. The hearing officer found that "General Order 22/01 controls tested positions in both the Enforcement Division of [MHSP] (Enforcement Troopers) and the Mississippi Bureau of Investigation" and that "[c]andidates for merit[-]promotion testing under General Order 22/01 must be sworn [MHSP] Officers."

25

By contrast, the hearing officer concluded that "General Order 22/02 is designated for promotion of [s]peciality [p]ositions, as well as for other positions not specifically named for promotion by another General Order." Consistent with Major Gillard's testimony during the hearing, the EAB officer determined that General Order 22/02 controlled promotions in driver services and, as a result, applied to the promotional process for the lieutenant position at issue.

¶47. The hearing officer further found that, in accordance with General Order 22/02 and the job-posting notice, both Kirk and Cunningham met all the minimum qualifications required to interview for the vacant lieutenant position. Like Kirk, the hearing officer found that Cunningham had been employed with MDPS since 1987 and had held the rank of master sergeant for at least two years prior to applying for the vacant lieutenant position. As previously noted, the hearing officer found that Kirk had served as a master sergeant for eleven years. With regard to Kirk's other qualifications, the hearing officer found that Kirk had: (1) supervised as many as fifteen employees and one sworn officer since becoming a master sergeant; (2) supervised the day-to-day operations of the driver-services division in District II; and (3) received one work-related commendation. With regard to Cunningham's qualifications, the hearing officer found that Cunningham had: (1) served as a master sergeant for more than three years prior to seeking the promotion; (2) supervised eleven or twelve driver-license examiners and one sworn officer; and (3) received five work-related commendations. The record shows that the hearing officer looked at the minimum

26

qualifications for the lieutenant position instead of considering which applicant was the most qualified in terms of skill, knowledge, and professional experience as required by General Order 22/02.

¶48.   As required by the job-posting notice, all six of the interviewees for the vacant lieutenant position had held the rank of master sergeant for at least two years. As stated, however, Kirk had held the position of master sergeant for the previous eleven years and was the most recent acting lieutenant of the driver-services division. On July 17, 2013, instead of following General Order 22/02, a three-person panel interviewed the six applicants for the position. The questions asked during the interview exam constituted objective technical questions and not subjective questions. However, as stated, the interviewers were not provided a rubric for scoring the correctness of the answers to the questions. The interviewers could score the questions however they chose even though the questions constituted objective technical questions.

¶49.   Major Gillard, the then-director of the driver-services division, conducted the interview process. Major Gillard selected Captain Parker and Lieutenant Kelly as the other two interview panelists. At the time of the interview, Captain Parker was the deputy director of the driver-services division, and Lieutenant Kelly was a lieutenant in the division. Due to their positions within the driver-services division, all three men were in Kirk's supervisory chain of command.

¶50.   Major Gillard and Captain Parker determined that, once applicants met the minimum

27

qualifications to interview for the vacant lieutenant position, the applicants' interview score would become the sole factor for determining who received the promotion. Major Gillard and Captain Parker testified that they developed six technical questions (as well as the corresponding answers) for the interview. However, as noted, the interviewers were provided no scoring scale or rubric for grading the answers to the questions. The panel asked each interviewee these same six questions.

¶51. In response to the interviewees' oral answers to the questions, the interview panel took notes and scored each response between one and five, with five being the best score. Since no scale or rubric existed for how to grade the answers to the questions, each panelist subjectively graded the interviewees' answers. Prior to the interviews, the panel agreed that no interviewer's final score of a candidate would be more than one point different from another interviewer's final score. As a result, after completing each interview, and before entering a candidate's final overall score, the panel members compared their subjective individual scores for the candidate to determine whether any scoring discrepancies existed. Where the scores for a specific question differed by more than one point, the interviewers discussed the scores and changed them to more closely align with one another.

¶52. Based on the applicants' interview responses, the panel's final scores for the candidates ranged from forty-three to seventy-three. Cunningham received the highest score at seventy-three, and Kirk received the second highest score at sixty-four. After completing the interview process, Major Gillard testified that he shredded both the answers to the exam

28

and the interviewers' notes. Although admitting that this was not agency policy, Major Gillard asserted he took this step as an added precaution to protect the integrity of the interview process.

¶53. Although the record failed to contain the interviewers' notes or the correct exam answers, the record did contain the interviewers' score sheets for each applicant. As discussed, since no scoring rubric existed, the interviewers could score the answer to each question between one and five as the interviewer saw fit. The score sheets showed that the interviewers gave Kirk a significantly lower score than Cunningham on interview questions 2 and 4. At the EAB hearing, the interviewers testified as to why they awarded Kirk a lower score on these questions.

¶54. Interview question 2 asked the interviewees to explain what they would advise in the following scenario: "A [m]aster [s]ergeant calls and tells you that [an individual who is sixteen years and nine months old] has an Alabama learner's permit, has held [the permit] for eight months[,] and wishes to get a Mississippi intermediate license." In discussing interview question 2, both Major Gillard and Captain Parker explained that Kirk initially gave a correct answer to the question but then changed her answer to an incorrect response. As a result, Captain Parker testified that he awarded Kirk fewer points than he would have if she had stuck to her initial answer. Major Gillard also testified that he originally awarded Kirk a four out of five but then lowered her score once she changed her answer to the incorrect response. As for Lieutenant Kelly, he testified that he did not recommend Kirk for

the promotion because she failed to fully answer the questions.

¶55. Interview question 4 asked the interviewees what "B" represented on a permanent disability card. Although the testimony reflected that "B" stood for "both," Captain Parker and Lieutenant Kelly explained that an applicant could answer "both" and receive a good score or the applicant could elaborate on the answer and receive an even higher score. In explaining the lower scores they gave Kirk on interview question 4, both Major Gillard and Captain Parker testified that Kirk answered that she did not know the correct answer to the question. Lieutenant Kelly again testified that he gave Kirk a low score because she failed to answer the question. Although Kirk admitted during her hearing testimony that she was unsure about her answer for question 4, she stated that she answered every single interview question. In addition, Kirk testified that the six interview questions were fair because they came straight from the manual on agency policies and procedures.

¶56. Because Cunningham received the highest cumulative oral interview score, the interview panel recommended that Colonel Berry, the MHSP Director, promote Cunningham to the vacant lieutenant position. Following Cunningham's promotion, Kirk filed a grievance with MDPS and asserted that she was not promoted due to her race, age, and gender. As the record reflects, Kirk is a black female over the age of forty, and Cunningham is a black male over the age of forty.

¶57. After failing to receive her requested relief through MDPS's grievance process, Kirk appealed to the EAB. At the conclusion of the EAB hearing, Kirk stipulated that, based on

30

the evidence, she would no longer pursue her discrimination claims based on race and age. As a result, the EAB hearing officer only determined whether MDPS discriminated against Kirk on the basis of her sex.

¶58. As previously discussed, the hearing officer found that General Order 22/02 applied to the promotion at issue because the position constituted a specialty position. The hearing officer also found that both Kirk and Cunningham met the requirements to interview for the position even though General Order 22/02 directed the promotion of "sworn personnel possessing skill, knowledge[,] and professional experience to specialty positions[.]" The hearing officer also concluded that Kirk was not more clearly qualified for the position than Cunningham.

¶59. In addition, the hearing officer found that Kirk never introduced evidence to show that any of her supervisors had ever made a derogatory remark about her sex at any time during her employment with MDPS, and she never stated during the appeal hearing that the panel interviewers were sexist. However, the hearing officer failed to address whether a sufficient factual basis or safeguards existed to support the interview panel's subjective grading and unauthorized promotional procedure. While acknowledging that no females sat on the interview panel, the hearing officer also found that there were no female supervisors in driver services who would have been qualified to sit on the interview panel. The hearing officer ultimately concluded that MDPS neither discriminated against Kirk based upon any impermissible ground nor denied Kirk the promotion based on her sex. As stated, without

31

addressing the unauthorized grading procedure or subjective grading used by the interview panelists, the hearing officer determined that Cunningham received the promotion for a legitimate, nondiscriminatory reason—his higher score on the interview. As a result of his findings, the hearing officer denied Kirk's requested relief.

¶60. On March 6, 2015, the hearing officer entered his order finding that MDPS had not failed to promote Kirk based on her sex. Kirk then appealed to the full EAB, which affirmed the hearing officer's decision. On May 1, 2015, Kirk filed a petition with the circuit court to appeal the decision reached by the full EAB. Aggrieved by the circuit court's judgment affirming the EAB's determination, Kirk appeals to this Court.

¶61. The Mississippi Supreme Court has held:

> The scope of judicial review of the findings and actions of an administrative agency is well-settled. The reviewing court must affirm the agency decision if the decision was (1) supported by substantial evidence; (2) not arbitrary or capricious; (3) within the scope or power of the agency; and (4) not a violation of the aggrieved party's constitutional or statutory rights.
>
> . . . . Substantial evidence exists so long as there is evidence that a reasonable mind might accept as sufficient to support a conclusion. The reviewing court is not authorized to substitute its judgment for that of the agency where there is substantial (that is, more than a scintilla of) evidence to support the finding. Moreover, there is a rebuttable presumption in favor of the agency decision and the burden of proof is on the party challenging that decision.

*Ray v. Miss. Dep't of Pub. Safety*, 172 So. 3d 182, 187 (¶¶15-16) (Miss. 2015) (internal citations and quotation marks omitted).

¶62. I also acknowledge that jurisprudence establishes that a promotional system based on subjective criteria can be facially neutral but yet discriminatorily applied so that it adversely

affects one group. *Page v. U.S. Indus. Inc.*, 726 F.2d 1038, 1046 (5th Cir. 1984).

¶63.　Kirk argues that the evidence submitted to the EAB demonstrated MDPS failed to promote her due to her gender. As a result, she contends the EAB's finding that MDPS did not discriminate against her lacked the support of substantial evidence. She therefore asks this Court to reverse the EAB's ruling.

¶64.　Upon review, I agree that MDPS acted arbitrarily by failing to follow General Order 22/02. I also find that MDPS's subjective promotional process lacked sufficient safeguards against discrimination and that its decision lacked the support of a clear and reasonably specific factual basis. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 616-17 (5th Cir. 2007); *Rowe v. Gen. Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972). As a result, I find that substantial evidence failed to support the EAB's findings. I would therefore reverse the circuit court's judgment affirming the EAB's decision and render a decision in Kirk's favor.

¶65.　In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the United States Supreme Court established a three-pronged test for a plaintiff to prove by circumstantial evidence that she suffered intentional discrimination. First, the plaintiff must establish a prima facie case of discrimination. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish a prima facie case of sexual discrimination, Kirk must prove: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or received less favorable treatment than did a similarly situated individual not in the

33

protected class." *Austen v. Weatherford Coll.*, 564 F. App'x 89, 93 (5th Cir. 2014) (citing

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513-14 (5th Cir. 2001)).

¶66.    The record reflects that Kirk established a prima facie case of sexual discrimination. *See Alvarado*, 492 F.3d at 611 ("Title VII proscribes an employer from . . . discriminating against any individual because of that individual's sex." (citation omitted)).  The parties raise no dispute as to the following facts:  (1) Kirk, as a female, is a member of a protected class; (2) she met the minimum qualifications necessary to interview for the vacant lieutenant position; (3) she experienced an adverse employment action when she failed to receive the sought-after promotion; and (4) Cunningham, who was not a member of Kirk's protected class, received more favorable treatment when MDPS promoted him instead of Kirk.  *See Austen*, 564 F. App'x at 93.  Because Kirk satisfied the first prong of the *McDonnell Douglas* analysis, the burden shifted to MDPS "to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action."  *McCoy*, 492 F.3d at 557 (citations omitted).[11]  MDPS's articulated reason for not promoting Kirk was that the interview score constituted the sole determining factor for awarding the promotion, and Cunningham received a higher interview score than Kirk.

¶67.    In previously acknowledging that a promotional system based on subjective evaluation

---

[11] *See also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981) ("We have stated consistently that the employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.").

and the favorable recommendation by an immediate supervisor can provide a ready vehicle for discrimination, the Fifth Circuit invalidated a subjective promotional system that resulted in discrimination where the system embodied the following mechanisms: (1) the foreman's recommendation was the single most important factor in the promotional process; (2) the foremen received no written instructions about the qualifications necessary for promotion; (3) the controlling standards were subjective and vague; (4) hourly employees received no notification of promotional opportunities or the requisite qualifications for jobs; and (5) the procedure contained no safeguards to prevent discriminatory practices. *Rowe*, 457 F.2d at 358-59.

¶68.    In further discussing subjective promotional practices, the Fifth Circuit has stated:

> An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection. *See* [*Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004)] (recognizing that *McDonnell Douglas* does not preclude an employer from relying on subjective reasons for its personnel decisions); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation."). **Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment.** *See* [*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)]; *Patrick*, 394 F.3d at 316-17; *see also Chapman*, 229 F.3d at 1034 (**"A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."**); *EEOC v. Target Corp.*, 460 F.3d 946, 957-58 (7th Cir. 2006) (agreeing with the Eleventh Circuit that **"an employer must articulate reasonably specific facts that explain how it formed its subjective opinion**

**of the applicant in order to meet its burden under *Burdine***”).

*Alvarado*, 492 F.3d at 616-17 (emphasis added).

¶69.    In *Alvarado*, a female state trooper applied for a transfer to the Texas Rangers. *Id.* at 609.  After failing to receive the transfer, Alvarado filed a sexual-discrimination lawsuit. *Id.* at 610.  In reviewing the district court's grant of summary judgment to the employer, the Fifth Circuit found that the employer failed to satisfy its burden to proffer a legitimate, nondiscriminatory reason because the employer provided no explanation or evidence "of how or why the interviewers arrived at [their] scores" or why the interviewers "rated the other candidates, particularly the ten men who were selected for the Rangers, higher than Alvarado." *Id.* at 617.  The Fifth Circuit further noted that "Alvarado's score sheets contain no notes or comments on her interview performance, and [the employer] has not pointed to any deposition testimony by the [interviewers] that would shed light on why they scored Alvarado and the other candidates the way they did." *Id.*  "Without some indication of the factual basis or specific reasons for Alvarado's interview score," the Fifth Circuit concluded that Alvarado's interview score was "at least as consistent with discriminatory intent as it [was] with nondiscriminatory intent because Alvarado may well have received the relatively low interview score on account of her sex." *Id.* (citation omitted).

¶70.    By contrast, in *Chapman*, the Eleventh Circuit found that the employer offered a sufficiently specific explanation for its failure to hire the plaintiff, Chapman, based on his interview. *Chapman*, 229 F.3d at 1028.  In *Chapman*, the employer offered two legitimate,

36

nondiscriminatory reasons for failing to hire Chapman. *Id.*[12] The Eleventh Circuit recognized that the employer's second proffered reason—Chapman's poor interview—constituted a subjective reason for failing to hire Chapman. *Id.* However, in discussing the employer's proffered subjective reason for refusing to hire Chapman, the Eleventh Circuit found that the employer "offered a clear and reasonably specific explanation of why Wogsland and Turnquist, the decision makers, arrived at that subjective conclusion." *Id.* at 1035. As the Eleventh Circuit stated, the decision makers offered the following explanation to support their decision not to hire Chapman:

> Wogsland observed that Chapman's imprecise answers were not "the answers he would expect Chapman needed to be able to give to technicians under his control, within his unit." As an example of an unclear answer given by Chapman, Wogsland stated that Chapman "wasn't very clear about why he had gone from Home Insurance Company to several other positions before he got to Transport. . . ."

> Turnquist explained that he[,] too[,] was concerned about how Chapman presented his work history. In comparing Wiggins[, another candidate,] and Chapman's interviews, Turnquist stated:

>> I thought that . . . Wiggins made a better presentation of himself and his skills. . . . I don't have an answer to that[.] . . . I felt I had more confidence in Graham in the way he presented his work history.

*Id.* The Eleventh Circuit concluded that, "[e]ven though Wogsland and Turnquist subjectively evaluated Chapman's interview, they also explained the grounds for their

---

[12] *Compare Cash Distrib. Co. v. Neely*, 947 So. 2d 286, 294 (¶29) (Miss. 2007) (refusing to follow the position adopted by several federal courts of appeals that an employee must rebut every single nondiscriminatory reason an employer proffers).

evaluation with reasonable clarity and specificity given the passage of time." *Id.* As a result, the Eleventh Circuit found that the employer had met its burden of establishing a legitimate, nondiscriminatory reason for failing to hire Chapman. *Id.*

¶71. Upon review, I find the facts in the present case are more similar to *Alvarado* than to *Chapman*. The interviewers in the present case failed to follow General Order 22/02's directive to promote "sworn personnel possessing skill, knowledge[,] and professional experience to specialty positions[.]" MDPS instead used minimum standards and an unauthorized oral-technical-question exam. MDPS then shredded the interview notes after the interview. Without a correlating scale or rubric for grading each of the objective technical questions asked during the interview, MDPS lacks the ability to provide "a clear and reasonably specific basis for its subjective assessment" of Kirk's interview. *See Alvarado*, 492 F.3d at 616 (citations omitted). As a result, I find that MDPS failed to meet its burden to establish a legitimate, nondiscriminatory reason for refusing to promote Kirk. *See McCoy*, 492 F.3d at 557.

¶72. As discussed, the record reveals that MDPS failed to follow authorized agency procedures or policies in conducting the promotional process for the vacant lieutenant position. The hearing officer found that General Order 22/02 governed the lieutenant position. However, the record demonstrates that MDPS completely failed to follow General Order 22/02. Regardless of whichever applicant possessed the most skill, knowledge, and experience related to the vacant position, the interviewers decided that an oral interview

38

exam alone, made up of six objective technical questions, would constitute the final determining factor as to who received the promotion. Also, instead of following General Order 22/02, MDPS applied the minimum standards applicable to a lieutenant position governed by General Order 22/01 to the specialty position at issue. Moreover, the evidence in the record of the shredding of the interview notes, lack of a scoring rubric, lack of approval of the scoring process, and composition of the interview panel reflects that no safeguards existed in this unauthorized subjective grading procedure to avert discrimination. *See Rowe*, 457 F.2d at 359. Jurisprudence reflects that a promotion system based on subjective criteria can be facially neutral but discriminatorily applied to adversely affect one group. *Page*, 726 F.2d at 1046. In the present case, MDPS failed to present evidence during the EAB hearing to show that the interviewers' chosen scoring method was or ever had been approved by the agency. Not only does the record demonstrate that no agency policy authorized such a promotional process, but also that no safeguards existed within the utilized promotional process to avoid discrimination or to validate the interviewers' subjective grading of objective technical questions. *See Rowe*, 457 F.2d at 359.

¶73. Despite the panel members' testimony about the utilized promotional process, the record reflects no specific evidence to which MDPS can point on appeal to meet its burden and demonstrate "how or why the interviewers arrived at [their] scores . . . ." *See Alvarado*, 492 F.3d at 617. The scores for each interview question had no supporting scoring rubric, and following the interview process, Major Gillard shredded both the answers to the exam

39

and the interviewers' notes. As Major Gillard himself admitted, this action was not authorized by any agency policy.

¶74. The record lacks any objective and reasonably specific evidence to validate the interviewers' initial subjective scoring of each question or their decision to then change differing scores to more closely align with each other. Without a scoring scale or rubric for the correct answers, the record lacks evidence as to the correctness of the answers to the objective questions and, thus, lacks an explanation of how the interviewers weighed and evaluated the content and correctness of each interviewee's answer to each question. *Cf. id.* (noting that the record contained no notes or comments that shed light on Alvarado's interview performance). Without such evidence as a means to satisfy MDPS's burden of production, I find insufficient MDPS's mere assertions that Cunningham was the most qualified candidate for the lieutenant position. As the *Alvarado* court noted, an employer's failure to provide sufficient evidence to meet its burden of production fails to afford the claimant "a full and fair opportunity to demonstrate pretext." *Id.* at 618. *See also Burdine*, 450 U.S. at 255 ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.").

¶75. Upon review, I find the record clearly reflects that MDPS acted arbitrarily and capriciously by failing to follow General Order 22/02 or any authorized agency procedure or policy in this promotional decision. *See Ray*, 172 So. 3d at 187 (¶¶15-16). Furthermore, as discussed, MDPS failed to articulate a clear and reasonably specific factual basis for its

40

subjective assessment of Kirk during the promotional process. *See Alvarado*, 492 F.3d at 616-17. As a result, MDPS failed to articulate a legitimate, nondiscriminatory reason for Kirk's nonpromotion. *See McCoy*, 492 F.3d at 557. I therefore conclude that the EAB's finding regarding Kirk's sexual-discrimination claim lacked support by substantial evidence. Accordingly, I would reverse the circuit court's judgment and render a judgment in Kirk's favor. In so doing, I would find that MDPS should promote Kirk to the position of lieutenant. As a result, I dissent from the majority's opinion.

**LEE, C.J., IRVING, P.J., AND WESTBROOKS, J., JOIN THIS OPINION.**